RECEIVED

DEC - 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BENJAMIN RAMEY PRO-SE

4251 CLAY ST. N.E.

WASH. D.C. 20019

PLAINTIFF,

V.                                No. 07-2132 (RJL)

POTOMAC ELECTRIC POWER COMPANY

701 9TH ST. N.W.

WASH. D.C. 20068

DEFENDANT,

OPPOSITION MOTION TO DEFENDANT'S

MOTION TO DISMISS

1. ON DEC. 10, 2004 AND JULY 11, 2005, APPOINTED ARBITRATORS BY PEPCO RULED AGAINST PLAINTIFF AFTER EVIDENCE PRESENTED SIGNIFIED THAT THE ALCOHOL TEST WAS IMPROPERLY ADMINISTERED, PURSUANT TO THE DEPT. OF TRANSPORTATION (DOT) FEDERAL LAW AND THE TERMINATION WAS NOT JUSTIFIED.

2. CONGRESS PASS LAW GIVING DOT THE POWER TO ENFORCE THE LAW ON TRUCKING COMPANIES AND DRIVERS WHO VIOLATE. GOVERNMENT AGENCIES, ARBITRATORS OR JUDGES CAN NOT SUPERSEDE FEDERAL LAW, TO SATISFY ANY COMPANY, BOUND BY DOT REQUIREMENTS. A COMPANY POLICY CAN NOT SUPERSEDE A FEDERAL LAW, BUT PEPCO ATTORNEY'S MISLEAD THE COURT, KNOWING THIS TO BE TRUE.

3. DOT REGULATES TRUCKING COMPANIES FOR THE SAFETY OF THE PUBLIC AND IT IS THE RESPONSIBILITY FOR THAT COMPANY TO ENROLL A DRUGS AND ALCOHOL PROGRAM, PURSUANT TO DOT REGULATIONS. THAT WAS NOT THE CASE WITH PEPCO AND PLAINTIFF IS SUFFERING BECAUSE THE ATTYS. CONTINUE TO LIE TO THE COURTS

To Cover Up The Federal Violations That Were Violated. PEPco Contracted An Unlicense Allege Technician To Conduct The Test That Testified Under Oath, He Was Only License In Virginia, (Ex. 1, Pg.167) Criminal Investigator Discovered He Was Not License Or Certified In The Entire Metropolitan Area.

4. Plaintiff Was Bound By DOT Testing And Testimony Under Oath From PEPco's Manager Confirms This As True, (Ex. 1, Pg. 212), But The Atty. Dispute His Testimony. (Ex. 2, Artical 19) Clearly States The Company Responsibility, Pursuant To The Law That Was Agreed Upon By The Local And PEPco, But Atty. Bertram Obviously Thought That Information Was Irrelevant.

5. (Ex. 3) The Federal Motor Carrier Safety Regulation (FMCSR) Hand Book That Contain The Rules, The Requirements And The Law That Trucking Co. As With PEPco Should Comply With Or Could Be Subject To Civil And Or Criminal Penalties. (Ex. 3, Sec. 390.37 In The FMCSR).

6. Plaintiff Test Was Altered To Indicate A Positive Result, To Convict Him Of Being Intoxicated. (Ex4) Test That Was Altered. (Ex. 5). Conclusion Of The Test By A U.S. Sup. Ct. traffic Panal Member Atty. That The Court Rely On As Credible.

7. Plaintiff Was Wrongful Terminated By Law And Also By The Evidence Presented. Those Who Allow Companies To Supersede The Law, Put The Safety Of The Public In Harms Way. What Other Violations Are Covered Up By Attys. Greed To Prevail? PEPco Drivers Transport Hasardous Material That Could Affect A Community, If Those As The Attys. Are Allowed To Cover Up The Violations. It Is A Crime To Brake The Law, But Outrageously Sad For Those Who Suffer Unlawful.

8. Plaintiff Request That The Court Deny Defendants Motion To Dismiss For The Sake Of Closure. As Of Today, Defendants Has Yet Told Plaintiff Who Terminated Him And For What Reason.

9. Plaintiff Possess A CDL (Commercial Drivers License) And Drove A CMV (Commercial Motor Vehical) For PEPco And Even If Plaintiff Was Not Bound By DOT, The Test Itself Is Invalid And Plaintiff Should Be Compensated For PEPco's Outrageous Behavior To Have Altered His Test. (Ex. 6), Plaintiffs Medical Card That DOT Requires, That The Company Must Comply With For CMV Drivers Along With A CDL.

3.

10. Atty. Bertrams's Intentions Is To Mislead The Court, By Placing The Cover Of The Contractual Agement Between PEPco And Local On Top Of PEPco's Personnel Policy, (Ex. 7) To Try To Justify A Dismissal And Atty. Bertram Intentionally Omitted Artical 19 (Applicable Laws And Regulations) From The Personnel Policy That Was Submitted To The Court In Her Motion To Dismiss.

11. (Ex. 2, Artical 19) States Exactly What Bertram Omitted In Motion To Dismiss. Atty. Bertram Knowingly And Willingly Is Trying To Manipulate The Court. (Ex. 2, Artical 19) Is Very Important Evidence For The Court To Make A Decision. Atty. Bertram Needs The Court To Supersede Federal Law As Those In The Past And For This Reason Is Why The Court Should Grant Plaintiff Motion. (Ex. 2) The Cover Page That Atty. Bertram Darkened To Mislead The Court. Atty. Bertram Need To Be Prosecuted For Obstruction Of Justice For Covering Up Federal Violations That Her Client Violated. Plaintiff's Test Was Altered, A U.S. Sup. Ct. Traffic Panel Member Confirm This To Be True. The Allege Alcohol Technician Was Not Legit And Plaintiff Was Wrongfully Terminated Because Of PEPco's Managers Outrageous Behavior Of Non-Compliance With DOT Testing. And Now Atty. Bertram Is Being Unloyal To The Court That Grant The Notice Of Removal Motion. This Outrageous Behavior Is The Reason Why Plaintiff Is Experiencing So Much Hardship Fighting For Justice. The Attorney's Are Corrupt + Deceitful. The Same Manner In Which Plaintiffs' Test Was Altered, Is The Same Way Attys. Have Been Filing Motions To The Court. Lying And Manipulating Is Their Defense And No One Is Exempt From Their Prevailing. The Arbitrators Ruled With PEPco After Evidence That The Company Was At Fault. Judge Retchen Erred When Dismissing Plaintiff Claim Of Wrongful Termination And Now Atty. Bertram Is Seeking For Dis. Ct. To Supersede Federal Law So That PEPco Can Prevail.

12. If The Court Grant Defendants Motion To Dismiss, It Would Only Satisfy Those That Have No Remorse For Others Well Being And No Respect For The Law. Plaintiff Lost 13 yrs. Of Savings And His Home Of 9 yrs. Because His Employer Employed Corrupt Attorney's. Plaintiff Was Also Held For Over 11 hrs. Before A Test Was Conducted And Results Were Forensically Invalid. (Ex. 3, Sec. 382.307) Test Must Be Administered Within 8 hrs. Or Cancelled.

13. THE FIRST ARBITRATOR ALLOWED PEPco's COMPANY POLICY TO SUPERSEDE DOT FEDERAL LAW AFTER THE LOCAL ARGUED THAT PEPco's ALCOHOL POLICY IS DOT WHEN AN EMPLOYEE DRIVES A CMV. (EX. 2, SEC. 18.04) PLAINLY STATES WHAT AN ARBITRATOR HAVE THE POWER TO DO.

14. THE SECOND ARBITRATOR RULED WITH PEPco AFTER EVIDENCE PROVED THAT PLAINTIFF DID NOT TEST POSITIVE AS ALLEGED BY PEPco WHILE IN THE CLINIC FOR THE FIRST ALLEGED POSITIVE TEST.

(EX. 8) LETTER ALLEGING PLAINTIFF TEST POSITIVE IN CLINIC.

(EX. 9) LETTER FROM DIRECTOR OF CLINIC THAT PLAINTIFF TEST NEGATIVE, SO THE QUESTION IS WHY WAS PLAINTIFF TERMINATED AND WHO TERMINATED HIM. BOTH MANAGERS DENIED UNDER OATH TERMINATING PLAINTIFF ON JULY 11, 2005, SO PLAINTIFF SHOULD BE COMPENSATED FOR DAMAGES. PLAINTIFF REQUEST DEFENDANTS MOTION TO DISMISS BE DENIED.

15. (EX. 3) SEC. 40.11, 40.15, 40.225, 40.227, 40.413, 382.101, 382.307 AND 390.35 INFORMS THE COURT OF THE FEDERAL RULINGS THAT A TRUCKING COMPANY IS TO COMPLY WITH AND IF THE COURT VIEW EX. A IN COUNSEL'S MOTION TO DISMISS, THE COURT WOULD DISCOVER ARTICAL 19 OMITTED FROM THE COMPANY POLICY INTENTIONALLY.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THE 6 DAY OF DEC. 2007, I HAVE CAUSED A TRUE AND CORRECT MOTION TO BE SERVED VIA FIRST CLASS MAIL POSTAGE PAID UPON THE FOLLOWING:

CONNIE BERTRAM
1700 K ST. N.W.
WASH. D.C. 20006

*Benjamin Ramey*

BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C. 20019



jhl

JH

GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF EMPLOYMENT SERVICES

HEARINGS AND ADJUDICATION SECTION

- - - - - - - - - - - - - x
                         :

BENJAMIN F. RAMEY,         :

      Claimant,        :

                       :

      v.              :   OHA No. 05-318

                       :

POTOMAC ELECTRIC POWER   :   OWC/ODC No. 608087
COMPANY,

                       :

      Employer,       :

                       :

    and             :

CHC,                   :

      Carrier.        :

- - - - - - - - - - - - - x

Wednesday, August 17, 2005

64 New York Avenue, N.E.
Washington, D.C. 20002

    The hearing in the above-entitled matter

was convened, pursuant to notice, at 2:26 p.m.

BEFORE:

        AMELIA G. GOVAN
        Administrative Law Judge

jhl

# C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Benjamin F. Ramey | 14 | 55 | 96 | -- |
| Lamar L. Dudley | 99 | 114 | 120 | 122 |
| Further Redirect | | | 123 | |
| Gregory M. Johnson, Sr. | 126 | 145 | 152 | -- |
| Thomas Hyde | 156 | 164 | 177 | -- |
| Negussie Birratu | 181 | 191 | 201 | 204 |
| David A. Duarte | 207 | 234 | 247 | 249 |

## EXHIBITS

| CLAIMANT'S | IDENTIFIED | RECEIVED |
|---|---|---|
| 1 - 5 | (Previously) | 9 |
| 6 | (Previously) | 179 |

| EMPLOYER'S | IDENTIFIED | RECEIVED |
|---|---|---|
| 1 through 8 | (Previously) | 11 |
| 9 | (Previously) | -- |
| 10 | (Previously) | 240 |

jhl

1      A    Approximately. I don't have the form in
2  front of me.

3      Q    Let me ask you this. Are you licensed to
4  perform tests in the District of Columbia?

5      A    I don't have a license. I am a certified
6  breath alcohol technician, yes.

7      Q    Nevertheless, anybody who works in the
8  District of Columbia is governed under the
9  Department of--Regulatory Commission. Isn't that
10 correct?

11     A    I don't know.

12     Q    But you do not have a license to conduct
13 tests in the District of Columbia?

14     A    I'm licensed in the State of Virginia,
15 right.

16     Q    Mr. Ramey was provided a form, isn't that
17 correct, of the results of the test?

18     A    Yes, ma'am.

19     Q    I'm going to show you.

20     A    Thank you.

21     Q    Do you recognize that form?

22     A    Yes, ma'am.

RAMEY'S TESTIMONY

jhl

212

1   on his feet.  He was slurring his words.  And, yes,

2   his eyes were very, very bloodshot.

3           And so after observing this and just his--

4   his mannerisms, how he held his hands, how he--how

5   his body moved and what have you, I--and of course

6   the--the smelling of the alcohol, I determined that

7   he needed to be tested.  Because at that time we

8   were in a--in a storm condition, he was a truck

9   driver in conduit which meant that he would be

10  going out into the community.  He had to be at the

11  top of his senses because of the danger.  It's a

12  danger in and by itself if you're--you're in--

13  you're well tested and didn't have any alcohol in

14  your system.  So and we have had some fatalities at

15  PEPCO so we were very, very astute to the fact that

16  we wanted to keep a close watch on this.

17      Q    What was the purpose of ordering testing

18  for Mr. Ramey?

19      A    When--when Mr. Ramey is a commercial motor

20  vehicle driver, we are bound by the Department of

21  Transportation that if an individual reports to

22  work under the influence of alcohol or he's



# AGREEMENT

## AND

### ANNEX A
### STANDARD WAGE CLASSIFICATION
### AGREEMENT OF MAY 30, 2004
### BETWEEN



### POTOMAC ELECTRIC POWER COMPANY
### AND
### PHI SERVICE COMPANY



### AND



### LOCAL UNION #1900
### OF THE
### INTERNATIONAL BROTHERHOOD
### OF
### ELECTRICAL WORKERS

EFFECTIVE May 30, 2004
2004 - 2008

With Wage and Salary Schedule
Effective
May 30, 2004
May 29, 2005
June 4, 2006
June 3, 2007
June 1, 2008

# CONTENTS

Page Number

| | | |
|---|---|---|
| Preamble | ................................................................................... | 1 |
| Article 1 | Management................................................................. | 1 |
| Article 2 | Bargaining Unit .......................................................... | 1 |
| Article 3 | Union Membership and Dues Deductions ................................................................ | 2 |
| Article 4 | Union Business ........................................................... | 4 |
| Article 5 | Pay Progression, Work Assignments and Job Classifications ........................................... | 6 |
| Article 6 | Special Premiums ...................................................... | 11 |
| Article 7 | Overtime ..................................................................... | 15 |
| Article 8 | Seniority ...................................................................... | 21 |
| Article 9 | Reduction in Working Forces .................................. | 25 |
| Article 10 | General Provisions................................................... | 28 |
| Article 11 | Holidays ...................................................................... | 29 |
| Article 12 | Vacations .................................................................... | 30 |
| Article 13 | Sickness Disability Allowances ............................. | 33 |
| Article 14 | Leave of Absence .................................................... | 38 |
| Article 15 | Limited Service ......................................................... | 41 |
| Article 16 | Suspension and Discharge .................................... | 42 |
| Article 17 | Grievance Procedure .............................................. | 43 |
| Article 18 | Arbitration.................................................................. | 45 |
| Article 19 | Applicable Laws and Regulations ......................... | 46 |
| Article 20 | Safety and Health .................................................... | 47 |
| Article 21 | Unauthorized Work Stoppages, Slowdowns, or Lockouts.................................................................. | 47 |
| Article 22 | Benefit Plans............................................................. | 48 |
| Article 23 | Identify of Parties and Complete Agreement ......... | 51 |
| Article 24 | Duration, Reopening and Renewal ........................ | 51 |

**Section 18.04.** The arbitration hearing shall be held as quickly as possible. The award of the Arbitrator shall be final and binding upon both parties and upon the employee(s) involved. The fees and expenses of the Arbitrator, and any other expenses agreed to by the parties prior to the arbitration hearing, shall be shared equally by the Company and the Union. The Arbitrator shall have power and authority to arbitrate only those matters expressly made subject to arbitration by the terms of this Agreement and shall rule only on the issues submitted to him/her. The Arbitrator shall have power only to interpret this Agreement and shall not have the power to alter or amend it.

**Section 18.05.** At the request of either party, a grievance involving the discharge or discipline of an employee shall be submitted to Expedited Arbitration (as defined below). The Arbitrator for such Expedited Arbitrations shall be appointed from a standing panel of at least ten (10) Arbitrators agreed to by the parties in the Memorandum of Understanding by which this Agreement was established. As soon as practicable after receipt of the arbitration request referred to in Section 18.02 above, the parties shall try to agree on a date(s) to arbitrate the case. If agreement is reached, the parties shall notify the American Arbitration Association (hereinafter "AAA") of the desired date(s). The AAA will then appoint an Arbitrator from the parties' standing panel who is available on the requested date(s). Prior to the parties' selection of a mutually acceptable date(s), neither party shall be informed of the availability of a named Arbitrator on a particular date. If the parties are unable to agree on a date within two (2) weeks after receipt of the request for arbitration, either party may so notify the AAA, requesting that the AAA appoint an Arbitrator who will set the time and date(s) after considering the parties' positions on when the case should be heard. In appointing Arbitrators under this Section, the AAA shall make every effort to evenly distribute the cases among the standing panel of Arbitrators. The Expedited Arbitration will be conducted according to the Expedited Arbitration rules generally in effect, except to the extent inconsistent with this Section.

# ARTICLE 19

## APPLICABLE LAWS AND REGULATIONS

**Section 19.01.** It is understood and agreed that the provisions of this Agreement are in all respects subject to all applicable laws and governmental regulations now or hereafter in effect and to the lawful rulings and orders of all regulatory commissions now or hereafter having jurisdiction. Should any provision of this Agreement be found to be in conflict with any applicable laws or lawful rulings or regulations, the parties shall at once meet for the purpose of discussing and/or modifying that portion of the Agreement only.

**Section 19.02.** The Company will endeavor to comply with all state and local laws and regulations relating to the safety and health of employees and will take such additional steps as may be necessary to make adequate provision therefore, including the establishment and maintenance of appropriate first aid stations and other facilities. The Company will also formulate and publish safety rules to which the employees shall be required to conform.

*Ex. 3*

# Federal Motor Carrier

# SAFETY

# Regulations

## Pocketbook

as produced by
U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION
PARTS 40, 390 THROUGH 397 AND 399

**UPDATED MONTHLY**

**Contains the New Hours of Service Regulations!**

## §40.7 How can you get an exemption from a requirement in this regulation?

(a) If you want an exemption from any provision of this part, you must request it in writing from the Office of the Secretary of Transportation, under the provisions and standards of 49 CFR part 5. You must send requests for an exemption to the following address: Department of Transportation, Deputy Assistant General Counsel for Regulation and Enforcement, 400 7th Street, SW., Room 10424, Washington, DC 20590.

(b) Under the standards of 49 CFR part 5, we will grant the request only if the request documents special or exceptional circumstances, not likely to be generally applicable and not contemplated in connection with the rulemaking that established this part, that make your compliance with a specific provision of this part impracticable.

(c) If we grant you an exemption, you must agree to take steps we specify to comply with the intent of the provision from which an exemption is granted.

(d) We will issue written responses to all exemption requests.

# Subpart B — Employer Responsibilities

## §40.11 What are the general responsibilities of employers under this regulation?

(a) As an employer, you are responsible for meeting all applicable requirements and procedures of this part.

(b) You are responsible for all actions of your officials, representatives, and agents (including service agents) in carrying out the requirements of the DOT agency regulations.

(c) All agreements and arrangements, written or unwritten, between and among employers and service agents concerning the implementation of DOT drug and alcohol testing requirements are deemed, as a matter of law, to require compliance with all applicable provisions of this part and DOT agency drug and alcohol testing regulations. Compliance with these provisions is a material term of all such agreements and arrangements.

(b) DOT tests must take priority and must be conducted and completed before a non-DOT test is begun. For example, you must discard any excess urine left over from a DOT test and collect a separate void for the subsequent non-DOT test.

(c) Except as provided in paragraph (d) of this section, you must not perform any tests on DOT urine or breath specimens other than those specifically authorized by this part or DOT agency regulations. For example, you may not test a DOT urine specimen for additional drugs, and a laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing.

(d) The single exception to paragraph (c) of this section is when a DOT drug test collection is conducted as part of a physical examination required by DOT agency regulations. It is permissible to conduct required medical tests related to this physical examination (e.g., for glucose) on any urine remaining in the collection container after the drug test urine specimens have been sealed into the specimen bottles.

(e) No one is permitted to change or disregard the results of DOT tests based on the results of non-DOT tests. For example, as an employer you must not disregard a verified positive DOT drug test result because the employee presents a negative test result from a blood or urine specimen collected by the employee's physician or a DNA test result purporting to question the identity of the DOT specimen.

(f) As an employer, you must not use the CCF or the ATF in your non-DOT drug and alcohol testing programs. This prohibition includes the use of the DOT forms with references to DOT programs and agencies crossed out. You also must always use the CCF and ATF for all your DOT-mandated drug and alcohol tests.

## §40.15 May an employer use a service agent to meet DOT drug and alcohol testing requirements?

(a) As an employer, you may use a service agent to perform the tasks needed to comply with this part and DOT agency drug and alcohol testing regulations, consistent with the requirements of Subpart Q and other applicable provisions of this part.

(b) As an employer, you are responsible for ensuring that the service agents you use meet the qualifications set forth in this part (e.g., §40.121 for MROs). You may require service agents to show you documentation that they meet the requirements of this part (e.g., documentation of MRO qualifications required by §40.121(e)).

§40.227

## §40.225 What form is used for an alcohol test?

(a) The DOT Alcohol Testing Form (ATF) must be used for every DOT alcohol test beginning February 1, 2002. The ATF must be a three-part carbonless manifold form. The ATF is found in Appendix G to this part. You may view this form on the ODAPC web site (http://www.dot.gov/ost/dapc).

(b) As an employer in the DOT alcohol testing program, you are not permitted to modify or revise the ATF except as follows:

(1) You may include other information needed for billing purposes, outside the boundaries of the form.

(2) You may use a ATF directly generated by an EBT which omits the space for affixing a separate printed result to the ATF, provided the EBT prints the result directly on the ATF.

(3) You may use an ATF that has the employer's name, address, and telephone number preprinted. In addition, a C/TPA's name, address, and telephone number may be included, to assist with negative results.

(4) You may use an ATF in which all pages are printed on white paper. You may modify the ATF by using colored paper, or have clearly discernable borders or designation statements on Copy 2 and Copy 3. When colors are used, they must be green for Copy 2 and blue for Copy 3.

(5) As a BAT or STT, you may add, on the "Remarks" line of the ATF, the name of the DOT agency under whose authority the test occurred.

(6) As a BAT or STT, you may use a ATF that has your name, address, and telephone number preprinted, but under no circumstances can your signature be preprinted.

(c) As an employer, you may use an equivalent foreign-language version of the ATF approved by ODAPC. You may use such a non-English language form only in a situation where both the employee and BAT/STT understand and can use the form in that language.

## §40.227 May employers use the ATF for non-DOT tests, or non-DOT forms for DOT tests?

(a) No, as an employer, BAT, or STT, you are prohibited from using the ATF for non-DOT alcohol tests. You are also prohibited from using non-DOT forms for DOT alcohol tests. Doing either subjects you to enforcement action under DOT agency regulations.

§§40.127(g), 40.129(d), 40.159(a)(4)(ii); 40.161(b): Reports to DER that test is cancelled

§40.129 (d): Report of test results to DER

§40.129(g)(1): Report to DER of confirmed positive test in stand-down situation

§§40.149(b): Report to DER of changed test result

§40.155(a): Report to DER of dilute specimen

§40.167(b) and (c): Reports of test results to DER

§40.187(a)-(f) Reports to DER concerning the reconfirmation of tests

§40.191(d): Notice to DER concerning refusals to test

§40.193(b)(3): Notification to DER of refusal in shy bladder situation

§40.193(b)(4): Notification to DER of insufficient specimen

§40.193(b)(5): Transmission of CCF copies to DER (not to MRO)

§40.199: Report to DER of cancelled test and direction to DER for additional collection

§40.201: Report to DER of cancelled test

## Alcohol Testing Information

§40.215: Notice to BATs and STTs of contact information for DER

§40.241(b)(1): Notification to DER that an employee is a "no show" for an alcohol test

§40.247(a)(2): Transmission of alcohol screening test results only when the test result is less than 0.02

§40.255(a)(4): Transmission of alcohol confirmation test results only when the test result is less than 0.02

§40.263(a)(3) and 263(b)(3): Notification of insufficient saliva and failure to provide sufficient amount of breath

## Appendix G to Part 40—Alcohol Testing Form

The following form is the alcohol testing form required for use in the DOT alcohol testing program beginning August 1, 2001. Use of the form is authorized beginning January 18, 2001.

NEXT PG.

# U.S. Department of Transportation (DOT)
## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

**Step 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _____
(Print)   (First, M.I., Last)

B: SSN or Employee ID No. _____

C: Employer Name _____
Street _____
City, ST ZIP _____

DER Name and
Telephone No. _____
DER Name                    (      )
                            DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☐Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing required by US Department of Transportation regulations and that the identifying information provided on the form is true and correct.

Signature of Employee _____
Date   Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual in accordance with the procedures established in the US Department of Transportation regulation, 49 CFR Part 40, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☐BAT ☐STT   DEVICE: ☐SALIVA ☐BREATH*  15-Minute Wait: ☐ Yes ☐No

SCREENING TEST:  (For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|--------------------|-------------------------------------|-----------------|--------------|--------|

CONFIRMATION TEST:  Results MUST be affixed to each copy of this form or printed directly onto the form.

REMARKS:
_____
_____
_____
_____

Alcohol Technician's Company _____  Company Street Address _____

(PRINT) Alcohol Technician's Name (First, M.I., Last)   Company City, State, Zip   (      )  Phone Number

Signature of Alcohol Technician _____
Date  Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee _____
Date  Month  Day  Year

**COPY 1 – ORIGINAL – FORWARD TO THE EMPLOYER**

*Affix
Or
Print
Screening Results
Here*

*Affix
With
Tamper Evident Tap*

*Affix
Or
Print
Confirmation Result
Here*

*Affix
With
Tamper Evident
Tape*

*Affix
Or
Print
Additional Results
Here*

*Affix
With
Tamper Evident
Tape*

§382.101

# Subpart A — General

## §382.101 Purpose.

The purpose of this part is to establish programs designed to help prevent accidents and injuries resulting from the misuse of alcohol or use of controlled substances by drivers of commercial motor vehicles.

## §382.103 Applicability.

(a) This part applies to every person and to all employers of such persons who operate a commercial motor vehicle in commerce in any State, and is subject to:

(1) The commercial driver's license requirements of part 383 of this subchapter;

(2) The Licencia Federal de Conductor (Mexico) requirements; or

(3) The commercial drivers license requirements of the Canadian National Safety Code.

(b) An employer who employs himself/herself as a driver must comply with both the requirements in this part that apply to employers and the requirements in this part that apply to drivers. An employer who employs only himself/herself as a driver shall implement a random alcohol and controlled substances testing program of two or more covered employees in the random testing selection pool.

(c) The exceptions contained in §390.3(f) of this subchapter do not apply to this part. The employers and drivers identified in §390.3(f) of this subchapter must comply with the requirements of this part, unless otherwise specifically provided in paragraph (d) of this section.

(d) **Exceptions.** This part shall not apply to employers and their drivers:

(1) Required to comply with the alcohol and/or controlled substances testing requirements of part 655 of this title (Federal Transit Administration alcohol and controlled substances testing regulations); or

(2) Who a State must waive from the requirements of part 383 of this subchapter. These individuals include active duty military personnel; members of the reserves; and members of the national guard on active duty, including personnel on full-time national guard duty, personnel on part-time national guard training and national guard military technicians (civilians who are required to

## §382.307 Reasonable suspicion testing.

(a) An employer shall require a driver to submit to an alcohol test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning alcohol. The employer's determination that reasonable suspicion exists to require the driver to undergo an alcohol test must be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver.

(b) An employer shall require a driver to submit to a controlled substances test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning controlled substances. The employer's determination that reasonable suspicion exists to require the driver to undergo a controlled substances test must be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver. The observations may include indications of the chronic and withdrawal effects of controlled substances.

(c) The required observations for alcohol and/or controlled substances reasonable suspicion testing shall be made by a supervisor or company official who is trained in accordance with §382.603. The person who makes the determination that reasonable suspicion exists to conduct an alcohol test shall not conduct the alcohol test of the driver.

(d) Alcohol testing is authorized by this section only if the observations required by paragraph (a) of this section are made during, just preceding, or just after the period of the work day that the driver is required to be in compliance with this part. A driver may be directed by the employer to only undergo reasonable suspicion testing while the driver is performing safety-sensitive functions, just before the driver is to perform safety-sensitive functions, or just after the driver has ceased performing such functions.

(e)(1) If an alcohol test required by this section is not administered within two hours following the determination under paragraph (a) of this section, the employer shall prepare and maintain on file a record stating the reasons the alcohol test was not promptly administered. If an alcohol test required by this section is not administered within eight hours following the determination under paragraph (a) of this section, the employer shall cease attempts to administer an alcohol test and

shall state in the record the reasons for not administering the test.

(2) Notwithstanding the absence of a reasonable suspicion alcohol test under this section, no driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions while the driver is under the influence of or impaired by alcohol, as shown by the behavioral, speech, and performance indicators of alcohol misuse, nor shall an employer permit the driver to perform or continue to perform safety-sensitive functions, until:

(i) An alcohol test is administered and the driver's alcohol concentration measures less than 0.02; or

(ii) Twenty four hours have elapsed following the determination under paragraph (a) of this section that there is reasonable suspicion to believe that the driver has violated the prohibitions in this part concerning the use of alcohol.

(3) Except as provided in paragraph (e)(2) of this section, no employer shall take any action under this part against a driver based solely on the driver's behavior and appearance, with respect to alcohol use, in the absence of an alcohol test. This does not prohibit an employer with independent authority of this part from taking any action otherwise consistent with law.

(f) A written record shall be made of the observations leading to an alcohol or controlled substances reasonable suspicion test, and signed by the supervisor or company official who made the observations, within 24 hours of the observed behavior or before the results of the alcohol or controlled substances tests are released, whichever is earlier.

## §382.309 Return-to-duty testing.

The requirements for return-to-duty testing must be performed in accordance with 49 CFR part 40, Subpart O.

## §382.311 Follow-up testing.

The requirements for follow-up testing must be performed in accordance with 49 CFR part 40, Subpart O.

# Subpart D — Handling of Test Results, Record Retention and Confidentiality

## §382.401 Retention of records.

(a) **General requirement.** Each employer shall maintain

§390.35

(5) Each roll of film shall include a microfilm of a certificate or certificates stating that the photographs are direct or facsimile reproductions of the original records. Such certificate(s) shall be executed by a person or persons having personal knowledge of the material covered thereby.

(c) All records and documents required to be maintained under this subchapter may be destroyed after they have been suitably photographed for preservation.

(d) **Exception.** All records except those requiring a signature may be maintained through the use of computer technology provided the motor carrier can produce, upon demand, a computer printout of the required data.

## §390.33 Commercial motor vehicles used for purposes other than defined.

Whenever a commercial motor vehicle of one type is used to perform the functions normally performed by a commercial motor vehicle of another type, the requirements of this subchapter and Part 325 of Subchapter A shall apply to the commercial motor vehicle and to its operation in the same manner as though the commercial motor vehicle were actually a commercial motor vehicle of the latter type.

**Example:** If a commercial motor vehicle other than a bus is used to perform the functions normally performed by a bus, the regulations pertaining to buses and to the transportation of passengers shall apply to that commercial motor vehicle.

## §390.35 Certificates, reports, and records: falsification, reproduction, or alteration.

No motor carrier, its agents, officers, representatives, or employees shall make or cause to make—

(a) A fraudulent or intentionally false statement on any application, certificate, report, or record required by Part 325 of subchapter A or this subchapter;

(b) A fraudulent or intentionally false entry on any application, certificate, report, or record required to be used, completed, or retained, to comply with any requirement of this subchapter or Part 325 of Subchapter A; or

(c) A reproduction, for fraudulent purposes, of any application, certificate, report, or record required by this subchapter or Part 325 of Subchapter A.

Next P.

§390.37

## §390.37 Violation and penalty.

Any person who violates the rules set forth in this subchapter or Part 325 of Subchapter A may be subject to civil or criminal penalties.

## Subpart C — [Removed and reserved.]

## Subpart D — [Removed and reserved.]



# Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3)*

## STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN

A. Employee Name **BENJAMIN F. RAMEY**
(PRINT) (First, M.I., Last)

B. SSN or Employee ID No. **578-66 2633**

C. Employer Name **PEPCO**
Street **701 9TH ST NW**
City, ST ZIP **WASHINGTON DC 20001**

DER Name and Telephone No. **NEGUSSIE BIRRATU**   **(202) 872-36**
DER Name                          DER Phone Number

D. Reason For Test: ☐ Random ☑ Reasonable Susp ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment

## STEP 2: TO BE COMPLETED BY EMPLOYEE

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee

Date **8 / 30 / 0**
Month Day Ye

## STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN

...he technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑ SAT ☐ STT   DEVICE: ☐ SALIVA ☑ BREATH* ☐ 15-Minute Wait: ☐ Yes ☐ No
SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|--------------------|-----------------------------------|-----------------|--------------|--------|
|        |                    |                                   |                 |              |        |

CONFIRMATION TEST:   *Results MUST be affixed to each copy of this form or printed directly onto the form.*
Remarks:

Alcohol Technician's Company   **1365 BENT TREE CIRCLE**
Company Street Address

**THOMAS HYDE**   **CENTVILLE VA 20121 703 802 277**
(PRINT) Alcohol Technician's Name (First, M.I., Last)   Company City, State, Zip   Phone Number

Signature of Alcohol Technician

Date **8 / 30 / 0**
Month Day Ye

## STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER

...tify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand ...at I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee

Date **8 / 30 / 0**
Month Day Ye

---

BREATHALYZER 7410
SERIAL # : ARHK-10

BREATHALYZER PRINTE
SERIAL # : ARHL-04
PRINTER LOG #: 0050

MM.DD.YY HH:MM
08.30.03 11:09

*****************
* TEST NUMBER: 0125
*
* AIR-BLANK TEST:
*    0.000 PERCENT
*
* BREATH TEST:
*    0.079 PERCENT
*****************

BREATHALYZER 7410
SERIAL # : ARHK-103

BREATHALYZER PRINTER
SERIAL # : ARHL-0498
PRINTER LOG #: 00502

MM.DD.YY HH:MM
08.30.03 11:32

*****************
* TEST NUMBER: 01253
*
* AIR-BLANK TEST:
*    0.000 PERCENT BF
*
* BREATH TEST:
*    0.065 PERCENT BA
*****************

DRY-GAS ACCURACY TEST

BREATHALYZER 7410
SERIAL # : ARHK-1031
TEST # : 01254

BREATHALYZER PRINTER
SERIAL # : ARHL-0498
PRINTER LOG #: 00503

MM.DD.YY HH:MM
08.30.03 11:59

*****************
* LABELED BAC VALUE:
*    0.040 PERCENT BAC
*
* CORRECTED BAC VALUE:
*  0.40    PERCENT BAC
*
* ACCURACY TEST RESULT:
*    0.039 PERCENT BAC
*****************
TECHNICIAN SIGNATURE:

*Ex. 5*



# Bryan W. Brown

Attorney at Law

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com

To:     William Bach
From:   Bryan W. Brown
Re:     Benjamin Ramey
Date:   July 19, 2007

    I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

    A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

    A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.



# MEDICAL EXAMINER'S CERTIFICATE

I certify that I have examined _[signature]_ in accordance with the
Federal Motor Carrier Safety Regulations (49 CFR 391.41-391.49) and with knowledge of the driving duties, I find this
person is qualified: and, if applicable, only when:

☐ wearing corrective lenses
☐ wearing hearing aid
☐ accompanied by a _____ waiver/exemption

☐ driving within an exempt intracity zone (49 CFR 391.62)
☐ accompanied by a Skill Performance Evaluation Certificate (SPE)
☐ qualified by operation of 49 CFR 391.64

The information I have provided regarding this physical examination is true and complete. A complete examination form with
any attachment embodies my findings completely and correctly, and is on file in my office.

| SIGNATURE OF MEDICAL EXAMINER | | TELEPHONE | DATE |
|---|---|---|---|
| | | 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 | 12/12/07 |

| MEDICAL EXAMINER'S NAME (PRINT) | | ☐ MD  ☐ DO  ☐ Chiropractor | |
| Edwin C. Shearman DO | | ☐ Physician Assistant  ☐ Advanced Practice Nurse | |

MEDICAL EXAMINER'S LICENSE OR CERTIFICATE NO./ISSUING STATE
10 578 DO

| SIGNATURE OF DRIVER | DRIVER'S LICENSE NO. | STATE |
|---|---|---|
| Benjamin _____ Penny | 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 2 C | |

ADDRESS OF DRIVER
421 Clay St. NE.

MEDICAL CERTIFICATE EXPIRATION DATE
12/12/05

**DISTRIBUTION: 1 COPY TO THE DRIVER, 1 COPY TO THE MOTOR CARRIER**



*Ramey case*

# HUMAN RESOURCES
## CORPORATE PERSONNEL POLICIES

### Click Below To Return

Corporate Personnel Policies All | Corporate Personnel Policies Recent Changes

| | |
|---|---|
| **Policy Section:** | 80: Personnel - General |
| **Policy Title:** | Drug and Alcohol |
| **Policy Number:** | 80.200 |
| **Effective Date:** | 12/23/1999 |
| **Issued Date:** | 03/01/2000 |
| **Supersedes Policy:** | Corporate Personnel Policy No. 80.200 dated 1/1/95 |

▼Policy Information:

## PURPOSE

The purpose of this policy is to establish and maintain a safe workplace and a healthy and efficient workforce free from the effects of substance abuse.

## GENERAL

A copy of this Corporate Personnel Policy No. 80.200, Drug and Alcohol, should be posted in a conspicuous place in each department and each employee should receive a copy of this Policy.

## INTRODUCTION

The Company is firmly committed to providing a safe workplace and promoting high standards of employee safety and health. Employee involvement with drugs or alcohol, on or off the job, can take its toll in the workplace by increasing absenteeism, by lowering productivity and morale, by undermining public confidence in the Company, and most importantly, by undermining the safety of employees and the public. The use or possession of illegal drugs is particularly unacceptable because, among other things, it involves criminal activity under state and federal laws. A comprehensive policy concerning drugs and alcohol is necessary to ensure that the Company continues to fulfill its special responsibility to provide energy in a safe, economical and reliable manner, and to ensure that employees are made aware of the Company's rules in this area.

### Employee Advisory Service

Early identification and treatment of a substance abuse problem is the best method for protecting the interests of all concerned. Since 1976, the Company has provided an avenue for seeking professional assistance to deal with such problems: the Employee Advisory Service.

Pepco's Employee Advisory Service is available to any employee who needs counseling or assistance in dealing with a drug or alcohol problem. Ultimately, however, it is the employee's responsibility to take the first step. While Pepco encourages voluntary participation in the Employee Advisory Service, such participation will not prevent, or lessen the extent of disciplinary action for violations of the rules set

## CONTENTS

|  |  | Page Number |
|---|---|---|
| Preamble | .................................................. | 1 |
| Article 1 | Management ...................................... | 1 |
| Article 2 | Bargaining Unit ................................... | 1 |
| Article 3 | Union Membership and Dues. | |
| | Deduction ........................................ | 2 |
| Article 4 | Union Business ................................... | 4 |
| Article 5 | Pay Progression, Work Assignments and Job | |
| | Classifications .................................... | 5 |
| Article 6 | Special Premiums ................................. | 10 |
| Article 7 | Overtime .......................................... | 13 |
| Article 8 | Seniority ......................................... | 18 |
| Article 9 | Reduction in Working Forces ...................... | 22 |
| Article 10 | General Provisions ............................... | 24 |
| Article 11 | Holidays ......................................... | 25 |
| Article 12 | Vacations ........................................ | 26 |
| Article 13 | Sickness Disability Allowances ................... | 29 |
| Article 14 | Leave of Absence ................................ | 33 |
| Article 15 | Limited Services ................................. | 36 |
| Article 16 | Suspension and Discharge ........................ | 37 |
| Article 17 | Grievance Procedure ............................. | 38 |
| Article 18 | Arbitration ....................................... | 40 |
| Article 19 | Application Laws and Regulations ................. | 41 |
| Article 20 | Safety and Health ................................ | 41 |
| Article 21 | Unauthorized Work Stoppages, Slowdown, or | |
| | Lockouts ......................................... | 42 |
| Article 22 | Benefit Plans .................................... | 42 |
| Article 23 | Identify of Parties and Complete Agreement ....... | 45 |
| Article 24 | Duration, Reopening and Renewal ................. | 45 |

i





**Potomac Electric Power Company**

# memo

TO:         Mr. Benjamin F. Ramey, EID 60863

FROM:       W. B. Sigafoose

SUBJECT:    Meeting Regarding Your Continued Employment

DATE:       July 16, 2004

On September 30, 2003, you were issued a Decision Making Leave (DML) for violating the Company's Drug and Alcohol Policy. At that time you were informed that you must enter into and successfully complete an approved rehabilitation program. You were also informed that failure to do so would result in your termination from the Company. This requirement was further documented in my memorandum to you of September 30.

On November 10, 2003, the Company was notified that you had been discharged from the approved rehabilitation program that you had entered. You were terminated from the program for having a positive Breathalizer reading while in attendance. This was a program violation.

As a result of the above incident, you have not fulfilled you obligation to successfully complete an approved rehabilitation program as required by your DML agreement, consequently, it appears discharge is warranted. This memorandum is to inform you that we have scheduled a Continued Employment Meeting and would like for you to attend. The meeting will be held in my office on July 22, 2004, at 2:00 p.m. at the Benning Service Center. Your Union has been advised and we understand they plan to attend. You can contact the Union on (301) 322-6030. After the meeting the Company will advise you in writing as to its decision your continued employment.

*JMA for
WBS*

W. B. S.

C.c.    Employee Relations
        HRIS/Employee Records
        Department Files



**KOLMAC CLINIC**
003 SPRING STREET
SILVER SPRING, MARYLAND 201 0-4080
301 688-0250

GAITHERSBURG MD
(301) 330-7888

WASHINGTON D C
(20) 938-1997

July 27, 2004

Jacquelyn Davis, Investigator

District of Columbia Criminal Justice Act
Defender Services

Dear Ms. Davis,

Mr. Benjamin Ramey was voluntarily admitted to the Kolmac Clinic on October 13, 2003 for treatment of his alcohol problem.

The Kolmac treatment program provides comprehensive detoxification, rehabilitation, and continued care services in a structured, intensive outpatient setting. During the rehabilitation phase patients initially attend 5 times per week, eventually participating in a total of 25 to 30 sessions over a period of two months. Each session is of 3 hours duration and includes group psychotherapy, didactic information, and, when indicated, the daily administration of Antabuse. During the continued care phase, patients attend a therapy group each week for up to 70 sessions in addition to AA, CA, and NA meetings. The program is certified by the State of Maryland as an outpatient facility for the treatment of alcohol and drug dependence.

Mr. Ramey was discharged on October 27, 2003.

Mr. Ramey was given a random urinalysis on October 13, 2003. The results were negative.

Sincerely,

Richard A. Hoover, LICSW

12B

In the United States District Court
For the District of Columbia

Benjamin Ramey,

Plaintiff,

V.                                                    07-2132 RJL

Potomac Electric Power
Company,

Defendant.

### ORDER
(Dec. 6, 2007)

Upon Consideration of Plaintiff Benjamin Ramey's Opposition Motion To Defendants' Motion To Dismiss, Plaintiff's Reply, It Is Hereby

Ordered That Plaintiff's Opposition Motion To Defendants' Motion To Dismiss Be Granted For Reasons That Federal Law Was Supersede Under The FMCSR (Fed. Motor Carrier Safety Regulations) Required By The Dept. Of Transportation (DOT) Drugs And Alcohol Law And It Is Further

Ordered That Counsel For Defendant File Apology Motion To The Court For Omitting Artical 19 Of The Contractual Agreement Between The Local And Pepco, That Would Enable The Court To Make A Fair Decision And It Is Further

Ordered That The Court Schedule A Hearing Date So Testimonies From Expert Witnesses Are Called Upon.

ENTERED THIS   DAY OF DEC, 2007

RJL

COPY TO:

CONNIE BERTRAM, ESQ.
WINSTON + STRAWN
1700 K ST. N.W.
WASH, D.C. 20006