UNITED STATES
DISTRICT COURT OF THE DISTRICT OF COLUMBIA

Benjamin Ramey Pro-Se
4251 Clay St. N.E.
Washington D.C. 20019,

Plaintiff,

v.                                          07-2132 RJL

Potomac Electric Power Company,
PEPCO
701 9th St. N.W.
Washington D.C., 20068

Defendant.

## Plaintiff's Motion For Defendant To Discontinue
### (Defamation Of Character)

1. On Sept. 1, 2003, Plaintiff, Benjamin Ramey reported to work and was accused of being intoxicated, which resulted into him being issued a DML (Decision Making Leave) and placed into a Alcohol Program.

2. On July 16, 2004, Plaintiff was informed by a memo from Defendant that he also tested positive while in the Alcohol Program, which resulted into his termination for Non-Compliance while in the Program.

3. On Sept. 1, 2003 and through the years of today, the Defendant continue to discredit Plaintiff's credibility by falsely accusing him of being an alcoholic which has affected Plaintiff's opportunity for employment when asked, "Why did you leave your last employment."

Plaintiff never once tested positive on either occasion and should be able to sue for compensatory and punitive damages.

Ex. 1, Test claimed to be Plaintiff's
Ex. 2, Forensic Expert conclusion of test
Ex. 3, Memo from Defendant accusing Plaintiff of positive test in program.
Ex. 4, Letter from Director of Alcohol Program disputing Defendant's memo.

**RECEIVED**
JAN - 8 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

4. Plaintiff experienced the loss of respect from family and friends, his dignity as a man, the relationship with family and friends, the loss of shelter and support for his 3 grandkids, his 13 years of savings, his 401-k, his good standard of credit, his home of 9 years and the opportunity to achieve another paying job to maintain the lifestyle had not the defendant defamed his character as being an alcoholic.

5. Early March 2007, for almost 2 weeks, Plaintiff and Defendant discussed a settlement starting in the low millions, to stop Plaintiff from suing, but the Defendant rejected every proposal. The Court must decide whether or not the Defendant is proven gilty in negotiating a settlement with Plaintiff Ex. 5, Settlement letter from Defendant.

6. Plaintiff suffers from a disorder caused by the Defendant's outrageous behavior for not seeking the truth before defaming Plaintiff's character of being an alcoholic.

## Certificate of Service

The undersigned certifies that he caused a true and correct copy of this motion to be served by first class mail, postage pre-paid on this 8TH day of Jan, 2008 on the following individual:

Connie Bertram, Esq.
1700 K St. N.W
Wash. D.C., 20006

Respectfully submitted,

Benjamin Ramey
Benjamin Ramey
4251 Clay St. N.E.
Wash. D.C., 20019

# Alcohol Testing Form

(The instructions for completing this form are on the back of Copy 3) — Ex. 1

## STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN

A. Employee Name: **BENJAMIN F. RAMEY** (PRINT) (First, M.I., Last)

B. SSN or Employee ID No.: **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**

C. Employer Name: **PEPCO**
Street: **701 9TH ST NW**
City, ST ZIP: **WASHINGTON DC 20001**

DER Name and Telephone No.: **NEGUSSIE BIDRATU**  **(202) 872-36**
DER Name / DER Phone Number

D. Reason For Test: ☐ Random ☑ Reasonable Susp ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment

## STEP 2: TO BE COMPLETED BY EMPLOYEE

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee: *Benjamin F. Ramey*

Date: 8 / 30 / 03

## STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑ SAT ☐ STT    DEVICE: ☐ SALIVA ☑ BREATH*    15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: (For BREATH DEVICE* write in the space below _only_ if the testing device is _not_ designed to _print_.)

Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result

CONFIRMATION TEST: Results MUST be affixed to each copy of this form or printed directly onto the form.

Remarks: _____

Alcohol Technician's Company: **Mid-Atlantic Drug Testing**
Company Street Address: **13615 Bent Tree Circle**
(PRINT) Alcohol Technician's Name (First, M.I., Last): **THOMAS HYDE**
Company City, State, Zip: **Centreville, VA 20121**   Phone Number: **(703) 802-22__**

Signature of Alcohol Technician: _signature_   Date: 8 / 30 / 03

## STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee: *Benjamin F. Ramey*   Date: 8 / 30 / 03

---

BREATHALYZER 7410
SERIAL # : ARHK-10
BREATHALYZER PRINTER
SERIAL # : ARHL-04
PRINTER LOG #: 0056

MM.DD.YY HH:MM
08.30.03 11:09

****************
* TEST NUMBER: 01252
*
* AIR-BLANK TEST:
*    0.000 PERCENT
*
* BREATH TEST:
*    0.070 PERCENT
****************
DATA ACCEPTED

BREATHALYZER 7410
SERIAL # : ARHK-103
BREATHALYZER PRINTER
SERIAL # : ARHL-049
PRINTER LOG #: 00502

MM.DD.YY HH:MM
08.30.03 11:32

****************
* TEST NUMBER: 01253
*
* AIR-BLANK TEST:
*    0.000 PERCENT BA
*
* BREATH TEST:
*    0.065 PERCENT BA
****************
DRY-GAS ACCURACY TEST

BREATHALYZER 7410
SERIAL # : ARHK-1031
TEST # : 01254

BREATHALYZER PRINTER
SERIAL # : ARHL-0498
PRINTER LOG #: 00503

MM.DD.YY HH:MM
08.30.03 11:59

****************
* LABELED BAC VALUE:
*    0.040 PERCENT BAC
*
* CORRECTED BAC VALUE:
*    0.40 PERCENT BAC
*
* ACCURACY TEST RESULT
*    0.039 PERCENT BAC
****************
TECHNICIAN SIGNATURE:
_signature_





# Bryan W. Brown
**Attorney at Law**

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com

To: William Bach
From: Bryan W. Brown
Re: Benjamin Ramey
Date: July 19, 2007

    I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

    A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

    A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.

Ex. 3


**Potomac Electric Power Company**

# memo

**TO:** Mr. Benjamin F. Ramey, EID 60863

**FROM:** W. B. Sigafoose

**SUBJECT:** Meeting Regarding Your Continued Employment

**DATE:** July 16, 2004

On September 30, 2003, you were issued a Decision Making Leave (DML) for violating the Company's Drug and Alcohol Policy. At that time you were informed that you must enter into and successfully complete an approved rehabilitation program. You were also informed that failure to do so would result in your termination from the Company. This requirement was further documented in my memorandum to you of September 30.

On November 10, 2003, the Company was notified that you had been discharged from the approved rehabilitation program that you had entered. You were terminated from the program for having a positive Breathalizer reading while in attendance. This was a program violation.

As a result of the above incident, you have not fulfilled you obligation to successfully complete an approved rehabilitation program as required by your DML agreement, consequently, it appears discharge is warranted. This memorandum is to inform you that we have scheduled a Continued Employment Meeting and would like for you to attend. The meeting will be held in my office on July 22, 2004, at 2:00 p.m. at the Benning Service Center. Your Union has been advised and we understand they plan to attend. You can contact the Union on (301) 322-6030. After the meeting the Company will advise you in writing as to its decision your continued employment.

*JMQ for*
*WBS*
W. B. S.

C.c.   Employee Relations
       HRIS/Employee Records
       Department Files



**KOLMAC CLINIC**
1003 SPRING STREET
SILVER SPRING, MARYLAND 20910-4080
301-589-0255

GAITHERSBURG MD
(301) 330-7886

WASHINGTON, D.C.
(202)638-1992

July 27, 2004

Jacquelyn Davis, Investigator

District of Columbia Criminal Justice Act
Defender Services

Dear Ms. Davis,

Mr. Benjamin Ramey was voluntarily admitted to the Kolmac Clinic on October 13, 2003 for treatment of his alcohol problem.

The Kolmac treatment program provides comprehensive detoxification, rehabilitation, and continued care services in a structured, intensive outpatient setting. During the rehabilitation phase patients initially attend 5 times per week, eventually participating in a total of 25 to 30 sessions over a period of two months. Each session is of 3 hours duration and includes group psychotherapy, didactic information, and, when indicated, the daily administration of Antabuse. During the continued care phase, patients attend a therapy group each week for up to 70 sessions in addition to AA, CA, and NA meetings. The program is certified by the State of Maryland as an outpatient facility for the treatment of alcohol and drug dependence.

Mr. Ramey was discharged on October 27, 2003.

Mr. Ramey was given a random urinalysis on October 13, 2003. The results were negative.

Sincerely,

Richard A. Hoover, LICSW

12B



# WINSTON & STRAWN LLP

| 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 | 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | (202) 282-5000 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| BUCKLERSBURY HOUSE<br>3 QUEEN VICTORIA STREET<br>LONDON, EC4N 8NH | FACSIMILE (202) 282-5100<br><br>www.winston.com | 21 AVENUE VICTOR HUGO<br>75116 PARIS, FRANCE<br><br>101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |

M. CARTER DELORME
(202) 282-5956
mdelorme@winston.com

March 14, 2007

**VIA FIRST-CLASS MAIL**

Benjamin Ramey
4251 Clay Street, N.E.
Washington, D.C. 20019

*CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY*

Re: Ramey v. Pepco

Dear Mr. Ramey:

    We are in receipt of your settlement demand, dated today, of $300,000. I must remind you that we had discussions within the last month regarding the fact that this specific amount was well beyond the scope of what Pepco deems as a reasonable starting place for settlement discussions.

    Nevertheless, I have discussed your demand with Pepco, and the Company rejects your proposal. Given the fact that you previously demanded $300,000 and that demand was also rejected, Pepco has elected not to engage in any further settlement discussions with you prior to the Court ordered mediation. Given how far apart the parties are in their settlement positions and Pepco's pending motion for summary judgment, we believe that any further settlement discussions would not be productive at this time.

    Thank you for your attention to this matter.

Sincerely,

M. Carter DeLorme

cc: Jill D. Flack, Esq.
       Connie N. Bertram, Esq.

DC:506598.2