IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

BENJAMIN RAMEY PRO-SE,

    PLAINTIFF,

V.

    NO. 07-2132 (RJL)

POTOMAC ELECTRIC POWER COMPANY,
PEPCO,

    DEFENDANT.

## PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S MOTION TO DISMISS THE CLAIM OF WRONGFUL TERMINATION, IN SUPPORT OF A U.S. SUPREME COURT RULING

Ex.1, I. PLAINTIFF RELY ON RULING BARRED BY THE U.S. SUPREME COURT, JUSTICE BRENNAN.

  1) SEE INFRA AT 462 U.S. 162; BOWEN V. USPS, 459 U.S. 212 (1983); VACA V. SIPES, 386 U.S. 171 (1967); HINE V. ANCHOR MOTOR FREIGHT, INC., 424 (1976).

  2) DELCOSTELLO V. TEAMSTERS, 462 U.S. 151 (1983), APP. IN No. 81-2386, P.19 (FOOTNOTE 5) 510 F. SUPP. 716 (1981)

II. PLAINTIFF CLAIM IS BARRED BY A U.S. SUPREME COURT RULING OF A 3 YEAR STATUE OF LIMITATION FOR WRONGFUL TERMINATION CLAIM.

III. PLAINTIFF STATES A CLAIM FOR WRONGFUL TERMINATION.

IV. PLAINTIFF REQUEST THE COURT TO GRANT CLAIM OF WRONGFUL TERMINATION AND DENY DEFENDANT'S MOTION TO DISMISS. A ORDER TO DENY DEFENDANT'S MOTION TO DISMISS WAS FILED WITH THIS MOTION. THE STATUE OF LIMITATION IS 3 YEARS, THE ALCOHOL TEST WAS FORENSICALLY INVALID, EX. AND PLAINTIFF SHOULD BE COMPENSATED AT ONCE.

RECEIVED
JAN 11 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I CAUSED A TRUE AND CORRECT COPY OF THE FOREGOING MOTION TO BE SERVED BY FIRST CLASS MAIL, POSTAGE PRE-PAID, ON THE FOLLOWING AS OF THE 11TH DAY OF JAN. 2008.

CONNIE BERTRAM, ESQ.
1700 K ST. N.W.
WASH. D.C., 20006

*Benjamin Ramey*
BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C., 20019

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BENJAMIN RAMEY

   PLAINTIFF,

V.                                    No. 07-2132 (RJL)

POTOMAC ELECTRIC POWER COMPANY,

   DEFENDANT.

## ORDER

UPON CONSIDERATION OF PLAINTIFF, BENJAMIN RAMEY'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS, THE COURT ORDERS AS FOLLOWS:

PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS IS GRANTED.

ORDERED THIS_____ DAY OF_____

_____

U.S. DISTRICT COURT JUDGE

Ex. 1

Case 1:07-cv-02132-RJL    Document 10    Filed 01/15/2008    Page 4 of 11

U.S. Supreme Court
DelCostello v. Teamsters, 462 U.S. 151 (1983)
DelCostello v. International Brotherhood of Teamsters

No. 81-2386

Argued April 25, 1983

Decided June 8, 1983*

462 U.S. 151

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR

THE FOURTH CIRCUIT

Syllabus

The issue in each of these cases is what statute of limitations applies in an employee suit against an employer and a union, alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation by mishandling the ensuing grievance or arbitration proceedings. United Parcel Service, Inc. v. Mitchell, 451 U. S. 56, held in a similar suit that an employee's claim against the employer was governed by a state statute of limitations for vacation of an arbitration award, rather than by a state statute for an action for breach of contract, but left open the issues as to what state statute should govern the employee's claim against the union or whether, instead of applying a state statute of limitations, the provisions of § 10(b) of the National Labor Relations Act establishing a 6-month limitations period for making charges of unfair labor practices to the National Labor Relations Board should be borrowed. In No. 81-2386, respondent local union brought a formal grievance under the collective bargaining agreement based on petitioner employee's alleged improper discharge. After a hearing, a joint union-management committee informed petitioner of its conclusion that the grievance was without merit, and the committee's determination became final on September 20, 1977. On March 16, 1978, petitioner filed suit in Federal District Court, alleging that the employer had discharged him in violation of the collective bargaining agreement, and that the union had represented him in the grievance procedure in a discriminatory, arbitrary, and perfunctory manner. The District Court ultimately granted summary judgment against petitioner, concluding that Mitchell compelled application of Maryland's 30-day statute of limitations for actions to vacate arbitration awards to both of petitioner's claims. The Court of Appeals affirmed. In No. 81-2408, petitioner local union invoked arbitration after it was unsuccessful in processing respondent employees' grievances based on the employer's alleged violations of the bargaining agreement arising from job-assignment practices. On February

Page 462 U. S. 152

24, 1978, the arbitrator issued an award upholding the employer's job assignments, and on January 19, 1979, respondents filed suit in Federal District Court, alleging that the employer had violated the bargaining agreement, and that the union had violated its duty of fair representation in handling respondents' claims. The District Court, applying New York's 90-day statute of limitations for actions to vacate arbitration awards, dismissed the complaint against both the employer and the union. Ultimately, the Court of Appeals, acting in light of the intervening decision in Mitchell, rejected the contention that § 10(b) should be applied; affirmed the dismissal as to the employer under the 90-day arbitration statute; but reversed as to the union, concluding that New York's 3-year statute for malpractice actions governed.

Held:

1. In this type of suit, the 6-month limitations period in § 10(b) governs claims against both the employer and the union. Pp. 158-172.

(a) When, as here, there is no federal statute of limitations expressly applicable to a federal cause of action, it is generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law. However, when adoption of state statutes would be at odds with the purpose or operation of federal substantive law, timeliness rules have been drawn from federal law -- either express limitations periods from related federal statutes, or such alternatives as laches. Auto Workers v. Hoosier Cardinal Corp., 383 U. S. 696, distinguished. P P. 158-163.

(b) An employee's suit against both the employer and the union, such as is involved here, has no close analogy in ordinary state law, and the analogies suggested in Mitchell suffer from flaws of both legal substance and practical application. Typically short state limitations periods for vacating arbitration awards fail to provide the aggrieved employee with a satisfactory opportunity to vindicate his rights, and analogy to an action to vacate an arbitration award is problematic, at best, as applied to the employee's claim against the union. While a state limitations period for legal malpractice is the closest state law analogy for the claim against the union, application of such a limitations period would not solve the problem caused by the too-short time in which the employee could sue the employer, and would preclude the relatively rapid resolution of labor disputes favored by federal law. In contrast, § 10(b)'s 6-month period for filing unfair labor practice charges is designed to accommodate a balance of interests very similar to that at stake here. Both the union's breach of its duty and the employer's breach of the bargaining agreement are often also unfair labor practices. Moreover, in § 10(b),

"Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and

Page 462 U. S. 153

2

an employee's interest in setting aside what he views as an unjust settlement under the collective bargaining system."

Mitchell, supra, at 451 U. S. 70-71 (Stewart, J., concurring in judgment). P P. 163-172.

2. The judgment in No. 81-2408 is reversed because it is conceded that the suit was filed more than 10 months after respondents' causes of action accrued. However, in No. 81-2386, the judgment is reversed, but the case is remanded, since petitioner contends that certain events tolled the running of the limitations period until about three months before he filed suit, but the District Court, applying a 30-day limitations period, declined to consider any tolling issue. P. 172.

679 F.2d 879, reversed and remanded; 671 F.2d 87, reversed.

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C.J., and WHITE, MARSHALL, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., post, P. 172, and O'CONNOR, J., post, P. 174, filed dissenting opinions.

Page 462 U. S. 154

JUSTICE BRENNAN delivered the opinion of the Court.

Each of these cases arose as a suit by an employee or employees against an employer and a union, alleging that the employer had breached a provision of a collective bargaining agreement and that the union had breached its duty of fair representation by mishandling the ensuing grievance and arbitration proceedings. See infra at 462 U. S. 162; Bowen v. USPS, 459 U. S. 212 (1983); Vaca v. Sipes, 386 U. S. 171 (1967); Hines v. Anchor Motor Freight, Inc., 424 U. S. 554 (1976). The issue presented is what statute of limitations should apply to such suits. In United Parcel Service, Inc. v. Mitchell, 451 U. S. 56 (1981), we held that a similar suit was governed by a state statute of limitations for vacation of an arbitration award, rather than by a state statute for an action on a contract. We left two points open, however. First, our holding was limited to the employee's claim against the employer; we did not address what state statute should govern the claim against the union. [Footnote 1] Second, we expressly limited our consideration to a choice between two state statutes of limitations; we did not address the contention that we should instead borrow a federal statute of limitations, namely, § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). [Footnote 2] These cases present these two issues.

Page 462 U. S. 155

We conclude that § 10(b) should be the applicable statute of limitations governing the suit, both against the employer and against the union.

3

I

A

Philip DelCostello, petitioner in No. 81-2386, was employed as a driver by respondent Anchor Motor Freight, Inc., and represented by respondent Teamsters Local 557. On June 27, 1977, he quit or was discharged [Footnote 3] after refusing to drive a tractor-trailer that he contended was unsafe. He took his complaint to the union, which made unsuccessful informal attempts to get DelCostello reinstated and then brought a formal grievance under the collective bargaining agreement. A hearing was held before a regional joint union-management committee. The committee concluded that the grievance was without merit. DelCostello was informed of that decision in a letter dated August 19, 1977, forwarding the minutes of the hearing and stating that the minutes would be presented for approval at the committee's meeting on September 20. DelCostello responded in a letter, but the minutes were approved without change. Under the collective bargaining agreement, the committee's decision is final and binding on all parties.

On March 16, 1978, DelCostello filed this suit in the District of Maryland against the employer and the union. He

Page 462 U. S. 156

alleged that the employer had discharged him in violation of the collective bargaining agreement, and that the union had represented him in the grievance procedure "in a discriminatory, arbitrary and perfunctory manner," App. in No. 81-2386, p.19, resulting in an unfavorable decision by the joint committee. Respondents asserted that the suit was barred by Maryland's 30-day statute of limitations for actions to vacate arbitration awards. [Footnote 4] The District Court disagreed, holding that the applicable statute was the 3-year state statute for actions on contracts. [Footnote 5] 510 F.Supp. 716 (1981). On reconsideration following our decision in Mitchell, however, the court granted summary judgment for respondents, concluding that Mitchell compelled application of the 30-day statute to both the claim against the employer and the claim against the union. 524 F.Supp. 721 (1981). [Footnote 6] The Court of Appeals affirmed on the basis of the District Court's order. 679 F.2d 879 (CA4 1982) (mem.).

B

Donald C. Flowers and King E. Jones, respondents in No. 81-2408, were employed as craft welders by Bethlehem Steel Corp. and represented by petitioner Steelworkers Local 2602. [Footnote 7] In 1975 and 1976, respondents filed several

Page 462 U. S. 157

grievances asserting that the employer had violated the collective bargaining agreement by assigning certain welding duties to employees in other job categories and departments

4

Ex. 2



# Bryan W. Brown
Attorney at Law

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com


To:   William Bach
From: Bryan W. Brown
Re:   Benjamin Ramey
Date: July 19, 2007

    I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

    A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

    A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.