IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUBIA

RECEIVED
MAR 0 6 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BENJAMIN RAMEY,
  PLAINTIFF,

V.                                         No. 07-2132 (RJL)

POTOMAC ELECTRIC POWER COMPANY,
  DEFENDANT.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXPOSE

I. COUNSEL'S BEHAVIOR ILLUSTRATES THROUGH HER MOTIONS OF BEING A CAREER CRIMINAL, THAT NEVER GOES TO JAIL FOR THE SAKE OF BLAMING OTHERS. COUNSEL'S OUTLOOK ON LIFE IS THAT OF A CRIMINAL. FOR OVER FOUR YEARS IN MANY TRIBUNALS AND MOTIONS FILED, WITH THE KNOWLEDGE OF THE TRUTH, COUNSEL REFUSES TO ADMIT WRONGDOING ON BEHALF OF HER CLIENT. COUNSEL INDEED CONSIDER OTHERS AS BEING IGNORANT TO THE REALITY OF WHAT SHE FAILS TO REALIZE. THE TRUTH IS THAT THE DEFENDANT JUST GOT CAUGHT RED HANDED, AFTER SO MANY ATTEMPS, FOR SO MANY YEARS, BY PLAINTIFF WHO SACRIFICED EVERYTHING INCLUDING HIS HOME OF NINE YEARS.

II. IN DEFENDANT'S OPPOSITION, "MOTION TO EXPOSE", COUNSEL CONTINUE TO MISLEAD THE COURT INTO THINKING THAT PLAINTIFF IS AGAIN MAKING FALSE ALLEGATIONS ABOUT HIS TESTING. IT IS SO CLEAR THAT THE TEST WAS ALTERED, BY THE CONCLUSION OF AN EXPERT THAT IS ON THE TRAFFIC PANEL IN SUP. CT. EX. 1. IF COUNSEL IS DISPUTING BROWN'S CONCLUSION OF THE TEST TO DISCREDIT HIM, THEN COUNSEL NEED TO COUNTER BROWN'S EXPERTISE WITH SOMEONE TO DISPUTE HIS CLAIM, OTHER THAN THE LIES THAT FINALLY CAUGHT UP WITH HER. COUNSEL SEEM TO HAVE TROUBLE BEING ABLE TO DISTINGUISH THE TRUTH VS. FICTION: PEPCO WAS WRONG IN CONDUCTING AN ILLEGAL TEST AND TO THINK OF ALL THAT WERE INVOLVED THAT ALLOWED A LARGE CORPORATION TO PREVAIL, NOT CONSIDERING THOSE THAT WERE AFFECTED.

III. WHEN JUDGE RETCHIN MENTIONED PLAINTIFF'S PRIOR CRIMINAL RECORD AND PLACED A PERMANANT GAG ORDER ON HIM, AND THEN DISMISS ALL CLAIMS, COUNSEL REJOICED. NOW COUNSEL WANT TO GET TECHNICAL. THE COURT DO NOT NEED AN ACTICAL TO ENCOURAGE OR DISCOURAGE. THAT

WAS NOT PLAINTIFF'S INTENTIONS. PLAINTIFF STANDS ON THE TRUTH AND THE TRUTH DO NOT CHANGE FOR ANYONE. COUNSEL OFTEN TRY TO CHANGE THE TRUTH BY OMITTING EVIDENCE, BLACKING OUT EVIDENCE AND LYING THAT SERVICE WAS IMPROPERLY SERVED.

IV. PLAINTIFF IS NOT MAKING BALD, UNSUPPORTED ALLEGATIONS AND IF SHE IS CONVINCED THAT THE ALLEGATIONS ARE FALSE AND UNSUPPORTED, COUNSEL NEED TO FIND ANOTHER CAREER. SEEMS OBVIOUSLY THAT COUNSEL IS DESPARATELY TRYING TO CONVINCE THE COURT THAT THE EVIDENCE AGAINST PEPCO DO NOT EXIST OR THAT SHE IS NOT AWARE OF WHAT IS TAKING PLACE. COUNSEL FEEL AS THOUGH EVERYONE IS INTIMIDATED BY PEPCO OR IMPRESSED. SHE FAIL TO REALIZE THAT SHE CAN NOT BULLY AND THROW PEPCO'S WEIGHT AROUND ON EVERYONE.

V. FROM THE BEGINNING AND THROUGH FOUR YEARS, PLAINTIFF HAVE BEEN PROTESTING THE TEST THAT HE KNEW, NOT ASSUMED, WAS NOT HIS TEST. WHAT RIGHT MIND INDIVISUAL WOULD SACRIFICE THEIR INCOME TO CHALLENGE A LARGE POWERFUL CORPORATION, IF THEY WERE INDEED INTOXICATED. ONE WOULD BE SHOCKED TO KNOW ALL THAT IT TOOK FOR PLAINTIFF TO GET WHERE HE IS TODAY CONCERNING THE CONCLUSION OF TEST THAT WAS ALTERED AND COUNSEL HAVE NERVE TO PROTEST THE VALIDITY OF THE TEST BY MEANS TO DISCREDIT AN EXPERT ON ALCOHOL TESTING. THOMAS HYDE WHO TOOK THE TEST TESTIFIED UNDER OATH THAT HE WAS ONLY LICENSE IN VIRGINIA, EX.2, PG.167. LAMAN DUDLEY TESTIFIED THAT HYDE, NOT ONLY ONCE, BUT REPEATLY SAID THAT THE TEST WAS ILLEGAL EX.2, PG.113. DAVID DUARTE WHO ORDERED THE TEST, TESTIFIED THAT PLAINTIFF WAS BOUND BY DOT, EX.2, PG.212 AND NOT PEPCO'S POLICY AS COUNSEL CLAIM. COUNSEL CAN NOT CALL UPON NO ONE TO RESCUE HER. ALL THE PLAYERS WERE ITHER TERMINATED, DEMOTED TO ANOTHER LOCATION OR FORCED TO RETIRE.

VI. THE NEWS PAPER ARTICAL, DEFENDANTS TRACK RECORD, WAS ONLY TO EXPOSE TO THE COURT HOW DEFENDANTS OPERATE OUTSIDE OF THEIR JURISDICTION. PLAINTIFF WAS LIED ON, LABLED AS A DRUNK FOR YEARS AND LOST EVERYTHING BECAUSE OF THAT. DEFENDANT CAUSED PLAINTIFF TO BE HOMELESS BY LYING ON HIM AND NOW COUNSEL WANT THE COURT TO DENY PLAINTIFF'S MOTION FOR EXPOSING THE TRUTH ABOUT THE DEFENDANT. COUNSEL IS DETERMINED TO MUSCLE ON PREVAILING THROUGH CHILDLISH TECHNICALITIES. DEFENDANT EXPOSED LIES, PLAINTIFF EXPOSED THE TRUTH AND NOW THE COURT MUST DECIDE ON WHICH PARTY WAS AT FAULT.

VII. CONCLUSION

FOR THE FOREGOING REASONS, PLAINTIFF RESPECTFULLY REQUEST THAT THE COURT ENTER AN ORDER DENYING DEFENDANTS MOTION IN ITS ENTIRETY AND GRANT PLAINTIFFS "MOTION TO EXPOSE" AS WITH ALL DEFENDANTS MOTIONS OF LIES.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THIS 6 DAY OF MARCH 2008 I HAVE CAUSED A TRUE AND COPY OF THE FOREGOING MOTION TO BE MAILED FIRST CLASS POSTAGE PRE-PAID TO THE FOLLOWING:

CONNIE BERTRAM
1700 K ST. N.W.
WASH. D.C., 20006

RESPECTFULLY SUBMITTED,

*Benjamin Ramey*

BENJAMIN RAMEY
4251 CLAY ST. N.E
WASH. D.C., 20019

EX. 1



# Bryan W. Brown
Attorney at Law

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com

To: William Bach
From: Bryan W. Brown
Re: Benjamin Ramey
Date: July 19, 2007

    I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

    A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

    A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.

Ex. 2

jhl
JH

1

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES
HEARINGS AND ADJUDICATION SECTION

- - - - - - - - - - - - - - - - x
BENJAMIN F. RAMEY,            :
                              :
        Claimant,             :
                              :
    v.                        :
                              :   OHA No. 05-318
POTOMAC ELECTRIC POWER        :
COMPANY,                      :   OWC/ODC No. 608087
                              :
        Employer,             :
                              :
    and                       :
                              :
CHC,                          :
                              :
        Carrier.              :
- - - - - - - - - - - - - - - x

Wednesday, August 17, 2005

64 New York Avenue, N.E.
Washington, D.C. 20002

The hearing in the above-entitled matter was convened, pursuant to notice, at 2:26 p.m.
BEFORE:

AMELIA G. GOVAN
Administrative Law Judge

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

jhl

2

APPEARANCES:

    On behalf of Claimant:

        MARIA C. MENDOZA, ESQ.
        216 G Street, N.W., First Floor
        Washington, D.C. 20001
        (202) 639-4488

    On behalf of Employer/Carrier:

        KEVIN J. O'CONNELL, ESQ.
        401 East Jefferson Street, Suite 204
        Rockville, Maryland 20850
        (301) 424-2394

ALSO PRESENT:

    Jacqueline Davis
    Emily Vistos

- - -

jhl

3

## C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Benjamin F. Ramey | 14 | 55 | 96 | -- |
| Lamar L. Dudley | 99 | 114 | 120 | 122 |
| Further Redirect | | | 123 | |
| Gregory M. Johnson, Sr. | 126 | 145 | 152 | -- |
| Thomas Hyde | 156 | 164 | 177 | -- |
| Negussie Birratu | 181 | 191 | 201 | 204 |
| David A. Duarte | 207 | 234 | 247 | 249 |

## EXHIBITS

CLAIMANT'S

| | IDENTIFIED | RECEIVED |
|---|---|---|
| 1 - 5 | (Previously) | 9 |
| 6 | (Previously) | 179 |

EMPLOYER'S

| | | |
|---|---|---|
| 1 through 8 | (Previously) | 11 |
| 9 | (Previously) | -- |
| 10 | (Previously) | 240 |

DUDLEY

jhl

113

```
 1  and they couldn't get a key for that room to get
 2  the correct papers.
 3      Q    About what time was this?
 4      A    Then it might be 11:00. Around there
 5  somewhere. I don't know.
 6      Q    Do you recall if this was Labor Day
 7  weekend?
 8      A    Yes, ma'am, I think it was. Yes.
 9      Q    Do you recall what particular day on that
10  weekend it was?
11      A    Sunday. It was a Sunday. Might be
12  Sunday. I didn't--you know, I could be wrong about
13  that.
14      Q    Did anybody mention whether this test was
15  a legal test?
16      A    The guy that was giving the test say it
17  wasn't a legal test. He repeat that to me and Ben
18  at least three time--at least a few time in that
19  room.
20      Q    Have you testified before regarding
21  Mr. Ramey's case?
22      A    No, ma'am.
```

jhl

167

1    A    Approximately. I don't have the form in
2 front of me.

3    Q    Let me ask you this. Are you licensed to
4 perform tests in the District of Columbia?

5    A    I don't have a license. I am a certified
6 breath alcohol technician, yes.

7    Q    Nevertheless, anybody who works in the
8 District of Columbia is governed under the
9 Department of--Regulatory Commission. Isn't that
10 correct?

11    A    I don't know.

12    Q    But you do not have a license to conduct
13 tests in the District of Columbia?

14    A    I'm licensed in the State of Virginia,
15 right.

16    Q    Mr. Ramey was provided a form, isn't that
17 correct, of the results of the test?

18    A    Yes, ma'am.

19    Q    I'm going to show you.

20    A    Thank you.

21    Q    Do you recognize that form?

22    A    Yes, ma'am.

DUARTE (SENIOR HUMAN RESOURCE SPECIALIST)

jhl

212

1   on his feet.  He was slurring his words.  And, yes,
2   his eyes were very, very bloodshot.
3        And so after observing this and just his--
4   his mannerisms, how he held his hands, how he--how
5   his body moved and what have you, I--and of course
6   the--the smelling of the alcohol, I determined that
7   he needed to be tested.  Because at that time we
8   were in a--in a storm condition, he was a truck
9   driver in conduit which meant that he would be
10  going out into the community.  He had to be at the
11  top of his senses because of the danger.  It's a
12  danger in and by itself if you're--you're in--
13  you're well tested and didn't have any alcohol in
14  your system.  So and we have had some fatalities at
15  PEPCO so we were very, very astute to the fact that
16  we wanted to keep a close watch on this.
17    Q    What was the purpose of ordering testing
18  for Mr. Ramey?
19    A    When--when Mr. Ramey is a commercial motor
20  vehicle driver, we are bound by the Department of
21  Transportation that if an individual reports to
22  work under the influence of alcohol or he's

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666