**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BENJAMIN RAMEY,<br><br>Plaintiff,<br><br>v.<br><br>POTOMAC ELECTRIC POWER COMPANY,<br><br>Defendant. | ) | No. 07-2132 (RJL) |

**DEFENDANT'S MOTION FOR SANCTIONS**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, Defendant Potomac Electric Power Company ("Pepco") hereby moves for sanctions against Plaintiff. In support of its motion, Pepco respectfully refers the Court to the attached memorandum.

Respectfully submitted,

/s/

Connie N. Bertram (Bar No. 435840)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Jill D. Flack (Bar No. 420020)
Associate General Counsel
Potomac Electric Power Company
701 9th Street, NW
Washington, D.C. 20068
(202) 872-2756
(202) 872-3281 (fax)

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BENJAMIN RAMEY, )
)
Plaintiff, )
)
v. ) No. 07-2132 (RJL)
)
POTOMAC ELECTRIC POWER )
COMPANY, )
)
Defendant. )

**DEFENDANT'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SANCTIONS**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, Defendant Potomac Electric Power Company ("Pepco") submits its Memorandum in Support of its Motion for Sanctions.

## I. INTRODUCTION AND SUMMARY

Over the past four years, Pepco and its employees and attorneys have been subjected to a seemingly never-ending succession of baseless and harassing lawsuits and claims filed by Plaintiff, a former conduit installer for Pepco. Plaintiff challenged in these proceedings his 2003 reasonable suspicion alcohol testing and subsequent discipline and termination. Each and every tribunal that has ruled on his claims has dismissed them, concluding that Plaintiff was "drunk" at work, that Pepco's testing of him was proper, and that Pepco's decisions to discipline and terminate him were justified.

Plaintiff has, nevertheless, doggedly continued to file lawsuit after lawsuit against Pepco and various other parties reasserting his dismissed claims or inventing new claims challenging the very same alleged conduct. In almost each and every filing with the Court, Plaintiff makes false and scandalous accusations concerning the conduct and motivations of Pepco, its counsel,

and the various tribunals that have considered his claims, including allegations that they have "lied," engaged in "cover ups" and "conspiracies," and manufactured evidence. It is clear from Plaintiff's own filings that the purpose of these baseless, repeated filings and scandalous attacks is to harass and burden Pepco and to try to extract a settlement from it.

Pepco had hoped that, by defending his repeated claims on the merits and prevailing on each and every motion to dismiss, Plaintiff would come to understand that he does not have any viable claims challenging his testing or the job actions taken against him. However, it has become apparent that the repeated rulings dismissing his claims have had quite the opposite effect. Indeed, just in the past three months, Plaintiff has filed at least ***six separate lawsuits*** against Pepco and others containing the same factual allegations and asserting the same claims that have been rejected by numerous tribunals. The time has come for the Court to exercise its authority under Rule 11 and its inherent authority to dismiss the pending claims, order Plaintiff to pay the fees and costs incurred by Pepco in defending the lawsuits, and enter an order limiting his ability to file lawsuits in the future.[1]

## II. FACTUAL BACKGROUND

As this Court is aware, Plaintiff's current action for wrongful discharge is one of eleven separate proceedings that he has filed against Pepco and its employees and counsel. In 2003 and 2004, Plaintiff filed union grievances challenging his suspension and termination. After full evidentiary hearings, the arbitrators rejected each of Plaintiff's grievances, finding that Pepco lawfully tested, disciplined and terminated him. See MTD Mem. at 2, 13-16.[2]

---

[1] As required by Rule 11(c)(2), Pepco served this Motion for Sanctions on Plaintiff twenty one days before filing it with the Court. See Ex. A. Plaintiff, however, refused to dismiss this or any of his other pending lawsuits.

[2] Pepco's memorandum in support of its motion to dismiss is cited herein as "MTD Mem." Pepco's briefing on its motion to strike is cited as "MTS Mem." and "MTS Reply."

Plaintiff then filed race discrimination, retaliation and tort claims challenging his testing, discipline and termination. MTD Mem., Ex. 1 at ¶¶ 33-44. In a March 31, 2006 ruling, this Court dismissed each of Plaintiff's claims with prejudice, finding, among other things, that:

> What plaintiff appears to conveniently ignore in bringing this suit is the fact that ***defendants have produced evidence which demonstrates that, on the night of August 31, 2003, plaintiff showed up to work drunk – so drunk that when he was finally given a breathalyzer test, eleven to twelve hours after he was first confronted by his supervisor, his blood alcohol level still registered at 0.065% to 0.07%. This is not a close call.***

Ramey v. Potomac Elec. Power Co., 468 F. Supp. 2d 51, 57 n.7 (D.D.C. 2006) ("Ramey I") (emphasis added). This ruling was summarily affirmed by the D.C. Circuit on December 18, 2006. See MTD Mem. at 2, 14 & Ex. 2.[3]

Then, in an injunction proceeding filed by Pepco in Superior Court, Plaintiff filed counterclaims against the company, asserting claims for alleged violations of his civil rights, harassment, threats, trespass, intimidation, "illegal entrance of mailbox," conspiracy, and intentional and negligent infliction of emotional distress. The Superior Court dismissed with prejudice each of Plaintiff's counterclaims. Ramey v. Potomac Elec. Power Co., No. 06CA5435 (D.C. Super. Ct.) ("Ramey II"), attached hereto as Ex. B. In addition, as part of its rulings on Pepco's defamation claims, the Court found that Plaintiff's statements that Pepco altered his test results, used an unlicensed technician to test him, and kidnapped him were false. MTD Mem. at 14-16 & Exs. 7-8.

Plaintiff then filed two additional lawsuits against Pepco in early 2007 asserting various state tort claims challenging Pepco's testing of him. The first suit alleged that Pepco and its counsel engaged in a conspiracy to defame him and to fabricate evidence and make false

---

[3] Plaintiff also filed two workers' compensation claims and an unemployment compensation claim against Pepco.

allegations against him. Plaintiff alleged in his second suit that Pepco kidnapped and falsely imprisoned him during its 2003 testing. Pepco filed motions to dismiss that established that the claims were untimely and barred by the doctrine of collateral estoppel. Both of the cases were dismissed by the Superior Court. Ramey v. Potomac Elec. Power Co., No. 07CA1625B (D.C. Super. Ct.) ("Ramey III"), attached hereto as Exs. C & D; Ramey v. Potomac Elec. Power Co. No. 07CA2419B, (D.C. Super. Ct.) ("Ramey IV"), attached hereto as Ex. E; MTD Mem. at 2, n.1.

Plaintiff, however, remained undaunted, and continued to file lawsuit after lawsuit raising these same claims and factual allegations. In the past three months alone, Plaintiff filed four more lawsuits against Pepco and its counsel: (1) the current action pending before this Court alleging wrongful discharge; (2) another action pending before this Court alleging that his testing violated the federal Motor Carrier Act; and (3) two separate actions for defamation pending in Superior Court against Pepco's counsel. See MTS Mem. at 2-3; Ramey v. Winston & Strawn, LLP, No. 08CA0822B (D.C. Super. Ct. filed Feb. 4, 2008) ("Ramey VII"), attached hereto as Ex. F.[4] Plaintiff has also filed in the past three months lawsuits against the Department of Transportation ("DOT"), the Department of Employment Services, and the International Brotherhood of Electrical Workers, purporting to challenge the handling of his grievances and unemployment proceedings.

---

[4] In addition to his wrongful discharge claim, Plaintiff filed in this case what he styled a "Motion to Discontinue" that purported to assert defamation claims against Pepco for its statements in the parties' various court proceedings. Mot. to Discontinue (filed Jan. 8, 2008). The very same day that he filed his opposition to Pepco's motion to strike the "Motion to Discontinue," he filed a defamation complaint asserting identical claims in Superior Court against Pepco's counsel. MTS Opp. at 1, 3; Ex. F.

## III. ARGUMENT

### A. Federal Courts Have The Authority To Sanction Parties And Their Counsel

Federal courts are authorized under Rule 11 of the Federal Rules of Civil Procedure and their inherent authority to sanction parties and their counsel who file baseless claims or pursue litigation for an improper purpose. Rule 11 prohibits filings that are frivolous, unsupported by evidence, or presented for an improper or harassing purpose. Fed. R. Civ. P. 11(b), see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Rule 11 requires litigants and their counsel to perform a "reasonable inquiry" of the facts and law before signing and filing a pleading, motion, or other paper to the court. Fed. R. Civ. P. 11(b).

In other words, the Rule requires litigants to "'stop-and-think' before initially making legal or factual contentions," and prohibits them from merely "drop[ping] papers into the hopper and insist[ing] that the court or opposing counsel undertake bothersome factual and legal investigation." Fed. R. Civ. P. 11, advisory comm. notes (1993 amendments); see also Land v. Chicago Truck Drivers Union, 25 F.3d 509, 517-18 (7th Cir. 1994). Once a district court finds that a party filed a pleading or paper that was not well grounded in fact, not warranted by law or interposed for an improper purpose, "Rule 11 ***requires*** that sanctions of some sort be imposed." Reynolds v. U.S. Capitol Police Bd., 357 F. Supp. 2d 19, 24 (D.D.C. 2004) (Leon, J.) (quoting Rafferty v. NYNEX Corp., 60 F.3d 844, 852 (D.C. Cir. 1995)) (emphasis in original).

Federal courts have not hesitated to impose Rule 11 sanctions on a party who makes baseless allegations or files a claim or motion for an improper purpose.[5] For instance, in Forti v.

[5] See also Falice v. Mullen, 2004 WL 1249140 (D.C. Cir. 2004) (revoking appellant's *in forma pauperis* status and dismissing case because appellant had brought at least three civil actions or appeals that were dismissed because they were frivolous, malicious, or failed to state a claim); Marina Management Servs. v. Vessel My Girls, 202 F.3d 315 (D.C. Cir. 2000) (district court

W.C. & A.N. Miller Dev. Co., 2006 WL 3191233 (D.D.C. Nov. 2, 2006), a pro se plaintiff made repeated filings that were barred by collateral estoppel and that contained a litany of baseless charges and factual mischaracterizations. Id. at *1. Concluding that her pleadings reflected a "calculated indifference" to prior rulings, and were "so clearly barred by the preclusion doctrine, her bad faith and intent to harass were apparent," the Court imposed Rule 11 sanctions and ordered the plaintiff to pay $15,000 in sanctions to the defendants. Id. at **1-2.

A court may also rely on its inherent powers to impose sanctions where Rule 11 does not otherwise authorize the Court to address a party's misconduct. Mikkilineni v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 271 F. Supp. 2d 151, 154 (D.D.C. 2003). Courts are vested with such power so that they may "protect[] the due and orderly administration of justice and . . . maintain[] the authority and dignity of the court." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). Although severe sanctions require a clear showing that a litigant acted in bad faith, vexatiously, wantonly, or for oppressive reasons, the court may use its inherent power to take sharp measures and "fill the gap" not addressed by the rules. Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991); see also Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469, 1477 (D.C. Cir. 1995).

Pro se plaintiffs are not immune to the imposition of sanctions pursuant to Rule 11 or the Court's inherent authority. As this Court noted in Mikkilineni:

> although the D.C. Circuit recognizes that *pro se* litigants are untrained in the law and consequently holds them to less stringent standards than litigants counseled by attorneys, sanctions against a *pro se* litigant may be warranted under certain circumstances. For example, sanctions may be warranted when the *pro se* party who abuses the legal process is acquainted with the rules of the judicial process and the consequences of violating the rules.

---

properly sanctioned plaintiff whose latest filing in contentious and prolonged litigation was designed primarily to harass).

271 F. Supp. 2d at 155 (dismissing complaint of pro se plaintiff who filed multiple actions against former employer that were virtually identical to an earlier action that had been dismissed); see also Fed. R. Civ. P. 11, advisory comm. notes (1993 amendments) (pro se litigants also "have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1 [to secure the just, speedy and inexpensive determination of every action and proceeding]").

As explained below, Pepco is entitled to sanctions against Plaintiff under these well-established standards.

**B. Plaintiff Should Be Sanctioned For His Repeated, Baseless Filings**

Plaintiff should be sanctioned pursuant to Rule 11 and the Court's inherent authority because his claims and allegations are patently false and legally untenable. As this Court recognized in Reynolds,

> where a party reiterates arguments that have already been unequivocally rejected by the Court, and its pleadings reflect a deliberate decision to ignore an opinion of the Court which is the controlling law of the case, sanctions are warranted under Rule 11.

357 F. Supp. 2d at 24 (emphasis in original). Much like the Plaintiff in Reynolds, in the various filings that Plaintiff has filed in this and other cases, Plaintiff reasserts allegations that numerous prior tribunals have rejected, dismissed, or found demonstrably false.

In his Complaint and his "Motion To Discontinue," for example, Plaintiff alleges that he was not intoxicated and that his alcohol test "was forensically invalid" and was "fixed" by Pepco. Comp. at ¶¶ 6, 8; Mot. to Discontinue at ¶ 3. In his opposition to Pepco's motion to dismiss, he claims that "Pepco contracted an unlicensed[d] allege[d] technician to conduct the test" and that Pepco violated DOT regulations in conducting the test. MTD Opp. at ¶¶ 3, 9, 11. In his "Reply" and his second "Opposition," which he filed without leave of Court, Plaintiff again alleges that

the test was altered, invalid, and improperly administered in violation of DOT rules, resulting in his "wrongful termination." MTD Surreply at ¶¶ 1-3, 8; Second Opp. at ¶ 4.

As Pepco explained in its motion to dismiss and in its motion to strike Plaintiff's "Motion to Discontinue," these claims are factually baseless and legally invalid. MTD Mem. at 3-16; MTS Mem. at 4-7. Moreover, they are barred by the doctrine of collateral estoppel because each of the multiple tribunals that have reviewed Plaintiff's claims and allegations has rejected them. See, e.g., MTD Mem. at 12-16, Exs. 5-8; Ramey I, 468 F. Supp. at 57 n.7. In two grievance arbitrations, two proceedings before the Department of Employment Services, and four civil cases challenging his testing, Plaintiff's allegations concerning his testing by Pepco have been rejected and dismissed with prejudice. See supra at 2-4.

For instance, ***none*** of the tribunals have credited Plaintiff's claim that he was not intoxicated at the time that he was tested. In fact, they explicitly found that Plaintiff was "visibly inebriated," "intoxicated," and "drunk" at the time of his testing. See, e.g., Ramey v. Potomac Elec. Power Co., OHA No. 05-318 at 7 (Mar. 17, 2006), attached hereto as Ex. G; Ramey I, 468 F. Supp. 2d at 57 n.7. Similarly, they uniformly rejected Plaintiff's allegations that Pepco altered his test forms, used an uncertified technician, and violated DOT laws in administering Plaintiff's blood alcohol test. See, e.g., MTD Mem., Ex. 5 at Exs. A-B & Ex. 6. Additionally, they found that Pepco properly disciplined and terminated Plaintiff. See, e.g., MTD Mem., Exs. 5-8; Ramey I, 468 F. Supp. at 57, n.7.

Moreover, each tribunal that has ruled on the legal claims asserted by Plaintiff in these cases has rejected them on a motion to dismiss. In Ramey I, this Court dismissed with prejudice Plaintiff's tort, discrimination and retaliation claims challenging his testing, discipline and termination. 468 F. Supp. at 60. In the three Superior Court proceedings, the Court dismissed

Plaintiff's conspiracy and defamation claims based on Pepco's alleged alteration of his test results and defamatory statements in its filings, and his tort claims challenging Pepco's actions during his testing. See supra at 3-4.

These rulings put Plaintiff on notice that his legal claims and factual allegations were baseless and legally invalid. Nevertheless, Plaintiff filed this lawsuit (and numerous others) reasserting the very same rejected factual allegations and legal claims. As in Reynolds, 357 F. Supp. 2d at 25, Plaintiff's reassertion of arguments and claims that have already been rejected reflects "a calculating indifference . . . to the prior rulings . . . [which] constitutes an intent to bring claims in bad faith." His decision to flout the Rules of this Court and to disregard the rulings against him compels an award of sanctions.

### C. Plaintiff Has Filed Repeated, Frivolous Suits And Filings To Harass And Burden Pepco

The imposition of sanctions is also warranted because Plaintiff filed these lawsuits for the improper purpose of harassing and burdening Pepco and its counsel. As this Court noted in Kaempfer v. Brown, 684 F. Supp. 319, 325-26 (D.D.C. 1988), when a party files multiple motions that "simply [lack] merit," it is clear that the filings serve no valid purpose and exist solely to burden and harass the opposing party. Under such circumstances, sanctions are appropriate to prevent the defending party from being involuntarily drawn into a "war of attrition" in which it is "forced to elect between capitulation to a host of unreasonable and unwarranted demands" or to concede liability where liability is clearly absent. Id.

It is clear that Plaintiff's persistent filings serve no purpose but to harass and burden Pepco and to somehow force it to settle with Plaintiff. As explained above, since 2003, Plaintiff has engaged in a veritable "war" with Pepco through various judicial and administrative fora. Plaintiff has filed eleven separate proceedings challenging his testing, discipline and termination

and the actions taken by Pepco and its counsel in responding to his lawsuits and defamatory leafleting. In the past three months alone, Plaintiff has filed four separate complaints against Pepco and its counsel and eight additional filings, including a "motion to discontinue" and surreplies that were not authorized or contemplated by the Rules.

> These repeated, baseless filings could not serve any legitimate purpose. Indeed, it is clear that Plaintiff is only continuing to file them in order to burden and harass Pepco so that it will settle with him. Throughout the cases, Plaintiff has repeatedly complained that Pepco would not entertain settlement discussions with him and has sought the intervention of the Courts in his efforts.[6] Plaintiff should not be allowed to continue his campaign of burdening and harassing Pepco and its employees and counsel, and should be sanctioned for his willful and egregious misconduct. See, e.g., Forti, 2006 WL 3191233 at *1 (imposing sanctions on pro se plaintiff for repeated filings made in bad faith and with intent to harass); Reynolds, 357 F. Supp. 2d at 26 (issuing monetary sanctions against plaintiff for ignoring prior rulings against him and for pursuing "vexatious and dilatory litigation").

---

[6] In Ramey II, for example, Plaintiff opposed Pepco's request to continue mediation, demanding that Pepco be required to settle with him. See Ramey II, Opp. to Pepco's Mot. to Continue Mediation (D.C. Super. Ct. filed Mar. 13, 2007), attached hereto as Ex. H. Plaintiff complained in other filings that Pepco had declined to settle his meritless claims, stating "[o]n two different occasions, [Pepco attorneys] discussed . . . settlement figures in the six digits for Plaintiff to discontinue the suing of Pepco and attorneys, but after a week and hours of an agreed amount on a settlement, [the attorneys] withdrew after Plaintiff would not except [sic] pocket change." Ramey III, Opp. at ¶ 5 (D.C. Super. Ct. filed May 9, 2007), attached hereto as Ex. I. Similarly, in his recent "motion to discontinue," Plaintiff again complains about Pepco's refusal to settle with him in the "low millions," asserting that "[t]he court must decide whether or not the defendant is proven gilty [sic] in negotiating a settlement with Plaintiff." Mot. to Discontinue at 2.

**D. Plaintiff Papers Are Replete With Unfounded And Offensive Personal Attacks On Pepco, Its Counsel, And The Judges Who Have Ruled On His Claims**

This Court should also sanction Plaintiff because he has repeatedly made offensive, personal attacks on Pepco, its counsel, and the tribunals that have ruled on his claims.

Recognizing that his substantive allegations lack merit, Plaintiff has resorted to making ad-hoc, scandalous attacks on Pepco and its counsel in his pleadings, motions, and other filings. In his Opposition to Pepco's motion to dismiss, for example, Plaintiff dispenses with any effort to substantiate the merits of his claim and instead strings together a series of accusations, stating that:

- "[Pepco's] attorneys continue to lie to the courts to cover up federal violations that were violated"
- "[T]he attorneys are corrupt [and] deceitful . . .."
- "Lying and manipulating is their defense and no one is exempt from their prevailing. . . .."
- "Pepco and its attorneys] have no remorse for others['] well being and no respect for the law."

Opp. at ¶¶ 3, 10-12.

Similarly, in his most recent filings before this Court, Plaintiff continues to lodge personal attacks against Pepco's counsel, with increasing fervor and rhetoric, stating:

- "Counsel is a cunning, manipulative [sic], deceitful attorney and expect[s] Plaintiff to crawl under a rock in silence. . . .." Third Opp. at ¶ 3.
- "Counsel is knowingly and willfully covering up lies by lying to the court." Id. at ¶ 5.
- "It seems as though Counsel may have some sort of problem dealing with reality." Id. at ¶ 2.
- "Counsel's ego will not allow her to throw in the towel . . .. Counsel is probably thumbing her nose up at the courts for allowing Plaintiff to file." Ramey v.

Potomac Elec. Power Co., No. 07CA2340 ("Ramey VI"), Docket Entry 8 (D.D.C. filed Feb. 1, 2008) at ¶ 6.

- "Counsel's outlook on life is that of a criminal." Plaintiff's Reply in support of his Mot. to Expose at ¶ I.

Equally egregious and offensive are Plaintiff's allegations that arbitrators and judges actively took part or conspired in some way in these fictionalized violations of law. Plaintiff's suggests such collusion throughout his filings, asserting, for instance, that "[t]he arbitrators even destroyed the tapes of the hearing days after their decision to prevent Plaintiff to appeal" and "everyone in every tribunal was part of the conspiracy to discredit Plaintiff as an alcoholic or was lied to or mislead by counsel." MTD Surreply at ¶ 2; MTS Opp. at ¶¶ 4-5. Additionally, he accuses Pepco's counsel of soliciting this Court's assistance in circumventing the law, claiming that "[c]ounsel has already exposed to the Court that she will try to manipulate to prevail and counsel also expect the court to assist her in doing so . . .." Plaintiff's Reply at ¶ 10.

These offensive and scandalous accusations have absolutely no basis and have no place in pleadings and papers filed in federal court. Plaintiff's inability to plead a legally cognizable claim against Pepco does not license him to attack Pepco or its counsel, or to question the integrity of the judicial system. Plaintiff's repeated, false statements clearly compel the imposition of sanctions. See, e.g., McCreary v. Heath, 2005 WL 975736, *2 (D.D.C. 2005) (pro se plaintiff was sanctioned and enjoined from making further filings as a consequence of repeated filings and escalating rhetoric and baseless accusations).

**E. This Court Should Sanction Plaintiff Pursuant To Rule 11 And The Inherent Authority Of The Court**

Once a violation of Rule 11 has been established, sanctions are required and it is within the court's broad discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); see also Fed. R. Civ. P.

11, advisory comm. notes (1983 amendments). Among the factors that this Court may consider in determining the extent of the sanction to impose are: (1) "[w]hether the improper conduct was willful, or [merely] negligent;" (2) "whether it was part of a pattern of activity, or an isolated event;" (3) "whether the person has engaged in similar conduct in other litigation;" and (4) "what effect [the improper conduct] had on the litigation process in time or expense." Fed. R. Civ. P. 11, advisory comm. notes (1993 amendments).

Plaintiff's violations of Rule 11 have been willful, repetitive, dilatory, and part of a pattern of harassment that he has employed throughout his many proceedings against Pepco. Plaintiff reasserted his baseless allegations after being put on notice by ***multiple*** adjudicative bodies that his claims lacked merit. Despite the virtual treatise of holdings that Pepco did not alter Plaintiff's test, violate any law, defame him or improperly discipline or terminate him, Plaintiff simply took his own preferred (but fictional) view of the law and chose to reassert his claims and to resort to false and scandalous accusations. As a sanction for this willful conduct, this Court should dismiss Plaintiff's claims with prejudice and award Pepco the fees and costs that it has incurred in defending this suit. See Reynolds, 357 F. Supp. 2d at 24, 26 (plaintiff and counsel required to pay monetary sanctions given history of litigation abuses).[7]

Consistent with its inherent authority, this Court should also enjoin Plaintiff from filing further lawsuits against Pepco or, at the very least, should require him to seek express leave from the court before commencing suit. It is well-settled that a court may employ injunctive remedies

[7] See also John Akridge Co. v. Travelers Cos, 944 F. Supp. 33, 34 (D.D.C. 1996) (holding that plaintiffs' duplicative lawsuit attempting to circumvent prior rulings against them "caused precious legal resources to be spent in the litigation of a baseless lawsuit" and ordering plaintiffs to reimburse defendants for "full cost" of defending the lawsuit); Washington Bancorporation v. Said, 812 F. Supp. 1256, 1275 (D.D.C. 1993) (awarding monetary sanctions and recovery of attorney's fees and costs incurred to defend against multiple claims that were insupportable as a matter of law).

to protect the integrity of the courts. In McCreary v. Heath, 2005 WL 975736, **2-3 (D.D.C. 2005), for instance, this Court enjoined a pro se plaintiff from filing further motions or lawsuits without express leave of the court. The court chastised the plaintiff for filing his lawsuit despite the dismissal of two similar claims and for "flood[ing] the judicial system with duplicative, unduly voluminous, and hyperbolic filings." Id. at **1-2. Noting that adverse rulings were insufficient to deter continued filings, the Court enjoined the plaintiff from filing any further motions or suits without express leave of the court, and relieved the defendants of their obligation to respond to any of plaintiff's filings absent an express court order. Id. at *2.[8]

This injunction should also apply to filings in state court. Federal district courts retain the authority to enjoin plaintiffs from making frivolous filings in both federal and state courts. See Kaempfer, 684 F. Supp. at 325-26. As the Court recognized in Kaempfer, when a party is unwilling to abide by prior decisions of the court or is "unwilling to take 'no' for an answer," an injunction preventing further filings ***in any forum*** "is both appropriate and necessary." See also Martin-Trigona, 737 F.2d 1254, 1262-63 (2d Cir. 1984) ("protection of our jurisdiction requires that we shield federal litigants, their counsel, court personnel, their families and professional associates from [pro se plaintiff's] vexatious litigation in all courts, state or federal); Pathways, Inc. v. Dunne, 329 F.3d 108, 114 (2d Cir. 2003) (federal court had jurisdiction and authority to issue injunction sought by nonprofit entity to enjoin adversary from filing further lawsuits against it in state court).

---

[8] See also Martin-Trigona v. United States, 779 F.2d 72 (D.C. Cir. 1985) (upholding injunction preventing litigious pro se individual from filing further suits without express leave); Urban v. United Nations, 768 F.2d. 1497, 1500 (D.C. Cir. 1985) (enjoining plaintiff from filing any action in any federal court without first obtaining leave to file and certifying that the claims are: (1) new claims never before raised or disposed of, (2) not frivolous or taken in bad faith, and (3) accompanied by the injunctive order then issued); In re Green, 669 F.2d 779, 787 (D.C. Cir. 1981) (per curiam) (court enjoined pro se petitioner from filing any civil action without leave of court).

The imposition of these injunctive sanctions are warranted in this case as well. It is clear that a lesser sanction would not alone deter Plaintiff from filing additional frivolous and baseless claims and motions. Even though he appears to understand and acknowledge them, Plaintiff has not been deterred by the numerous rulings dismissing his claims against Pepco and its counsel with prejudice. Indeed, these rulings seemed to have done nothing but inflame Plaintiff further, resulting in more and more frequent filings and escalating attacks on Pepco and its counsel and the promise that "Plaintiff is determine[d] to stand firm." Second Opp. to Pepco's Mot. to Strike at 1. Thus, this Court should require Plaintiff to seek leave of the court before filing any lawsuit or motion against Pepco or its employees or attorneys in state or federal court.[9]

## IV. CONCLUSION

For the foregoing reasons, Pepco's motion for sanctions should be granted, and the Court should: (1) dismiss Plaintiff's claims in their entirety with prejudice; (2) order Plaintiff to reimburse Defendant for the reasonable fees and expenses that it incurred in responding to his filings; and (3) require Plaintiff to seek express leave of the Court, as outlined above, before filing any further suits or motions against Pepco.

---

[9] In seeking leave, Plaintiff should be required to submit with his motion for leave: (1) a copy of the sanctions order; (2) copies of all of Plaintiffs prior complaints and the rulings on them; and (3) all evidence that supports his claims against Pepco or its employees or counsel.

Respectfully submitted,

/s/

Connie N. Bertram (Bar No. 435840)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Jill D. Flack (Bar No. 420020)
Associate General Counsel
Potomac Electric Power Company
701 9th Street, NW
Washington, D.C. 20068
(202) 872-2756
(202) 872-3281 (fax)

Counsel for Defendant

March 12, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of March 2008, I caused a true and correct copy of the foregoing Motion for Sanctions and Memorandum in Support to be served by first class mail, postage prepaid, on the following:

Benjamin Ramey
4251 Clay Street, NE
Washington, DC 20019

/s/
Connie N. Bertram

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BENJAMIN RAMEY,<br><br>Plaintiff,<br><br>v.<br><br>POTOMAC ELECTRIC POWER COMPANY,<br><br>Defendant. | ) | No. 07-2132 (RJL) |

**O R D E R**

Upon consideration of Defendant 's Motion For Sanctions, and the parties' briefing on it, the Court orders that Defendant's Motion to For Sanctions is GRANTED, and:

(1) Plaintiff's Complaint is DISMISSED with prejudice in its entirety, and

(2) Defendant is AWARDED reasonable costs and fees incurred in defending the Complaint; and

(3) Plaintiff is ENJOINED from filing further suit against Defendant Pepco without express leave of the Court and, in seeking leave, must file with the motion (1) a copy of the sanctions order; (2) copies of all of Plaintiff's prior complaints and the rulings on them; and (3) all evidence that supports his claims against Pepco or its employees or counsel.

ORDERED this ___ day of _______________.

______________________________
United States District Court Judge

Case No. 07-2132 (RJL)

# Exhibit A

# WINSTON & STRAWN LLP

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

(202) 282-5000

FACSIMILE (202) 282-5100

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-154

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-58

CONNIE N. BERTRAM
(202) 282-5847
cbertram@winston.com

February 15, 2007

**BY FIRST CLASS MAIL**

Benjamin Ramey
4251 Clay Street, NE
Washington, D.C. 200019

Re: Ramey v. Potomac Electric Power Company
Case No. 07-2132 (RJL)

Dear Mr. Ramey:

I am writing on behalf of Potomac Electric Power Company ("Pepco") to address your continued pursuit of baseless litigation and claims against Pepco and your false and offensive attacks against Pepco and its counsel in your lawsuits pending in federal District Court in the District of Columbia.

Pepco is prepared to file a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority. As you are aware, Pepco has asked the courts to dismiss your pending cases and to strike your "Motion for Defendant to Discontinue" in its entirety. As part of the relief sought by Pepco in its motion for sanctions, Pepco will reassert these requests, request monetary sanctions, and will also request that the Court take action to restrain you from continuing to harass Pepco by filing frivolous and baseless claims against it. Pepco requests that you voluntarily dismiss your pending claims against Pepco and its counsel, and withdraw your Motion to Discontinue by March 7, 2008 in order to avoid the imposition of sanctions against you.

As required by Rule 11, this letter provides you with notice that Pepco intends to file the attached motion for sanctions if you do not voluntarily dismiss your claims and withdraw your Motion to Discontinue by March 7, 2008. Although we are loathe to pursue a motion for sanctions, we will be compelled to undertake such action unless you comply with these obligations.

Thank you for your kind attention to this matter, and we look forward to receiving your notices of dismissal.

Sincerely,

Connie N. Bertram

cc: Jill D. Flack, Esq.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BENJAMIN RAMEY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-2132 (RJL) |
| POTOMAC ELECTRIC POWER COMPANY, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SANCTIONS**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, Defendant Potomac Electric Power Company ("Pepco") hereby moves for sanctions against Plaintiff. In support of its motion, Pepco respectfully refers the Court to the attached memorandum.

Respectfully submitted,

/s/

Connie N. Bertram (Bar No. 435840)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Jill D. Flack (Bar No. 420020)
Associate General Counsel
Potomac Electric Power Company
701 9th Street, NW
Washington, D.C. 20068
(202) 872-2756
(202) 872-3281 (fax)

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BENJAMIN RAMEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-2132 (RJL) |
| | ) | |
| POTOMAC ELECTRIC POWER COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM**
**<u>IN SUPPORT OF ITS MOTION FOR SANCTIONS</u>**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, Defendant Potomac Electric Power Company ("Pepco") submits its Memorandum in Support of its Motion for Sanctions.

## I. INTRODUCTION AND SUMMARY

Over the past four years, Pepco and its employees and attorneys have been subjected to a seemingly never-ending succession of baseless and harassing lawsuits and claims filed by Plaintiff, a former conduit installer for Pepco. Plaintiff challenged in these proceedings his 2003 reasonable suspicion alcohol testing and subsequent discipline and termination. Each and every tribunal that has ruled on his claims has dismissed them, concluding that Plaintiff was "drunk" at work, that Pepco's testing of him was proper, and that Pepco's decisions to discipline and terminate him were justified.

Plaintiff has, nevertheless, doggedly continued to file lawsuit after lawsuit against Pepco and various other parties reasserting his dismissed claims or inventing new claims challenging the very same alleged conduct. In almost each and every filing with the Court, Plaintiff makes false and scandalous accusations concerning the conduct and motivations of Pepco, its counsel,

and the various tribunals that have considered his claims, including allegations that they have "lied," engaged in "cover ups" and "conspiracies," and manufactured evidence. It is clear from Plaintiff's own filings that the purpose of these baseless, repeated filings and scandalous attacks is to harass and burden Pepco and to try to extract a settlement from it.

Pepco had hoped that, by defending the repeated claims on the merits and prevailing on each and every motion, Plaintiff would come to understand that he does not have any viable claims challenging his testing or the job actions taken against him. However, it has become apparent that the repeated rulings dismissing his claims have had quite the opposite effect. Indeed, just in the past three months, Plaintiff has filed at least ***six separate lawsuits*** against Pepco and others containing the same factual allegations and asserting the same claims that have been rejected by numerous tribunals. The time has come for the Court to exercise its authority under Rule 11 and its inherent authority to dismiss the pending claims, order Plaintiff to pay the fees and costs incurred by Pepco in defending the lawsuits, and enter an order limiting his ability to file lawsuits in the future.[1]

## II. FACTUAL BACKGROUND

As this Court is aware, Plaintiff's current action for wrongful discharge is one of ten separate proceedings that he has filed against Pepco and its employees and counsel. In 2003 and 2004, Plaintiff filed union grievances challenging his suspension and termination. After full evidentiary hearings, the arbitrators rejected each of Plaintiff's grievances, finding that Pepco lawfully tested, disciplined and terminated him. See MTD Mem. at 2, 13-16.[2]

---

[1] As required by Rule 11(c)(2), Pepco served this Motion for Sanctions on Plaintiff twenty one days before filing it with the Court.

[2] Pepco's memorandum in support of its motion to dismiss is cited herein as "MTD Mem." Pepco's briefing on its motion to strike is cited as "MTS Mem." and "MTS Reply."

Plaintiff then filed race discrimination, retaliation and tort claims challenging his testing, discipline and termination. MTD Mem., Ex. 1 at ¶¶ 33-44. In a March 31, 2006 ruling, this Court dismissed each of Plaintiff's claims with prejudice, finding, among other things, that:

> What plaintiff appears to conveniently ignore in bringing this suit is the fact that ***defendants have produced evidence which demonstrates that, on the night of August 31, 2003, plaintiff showed up to work drunk – so drunk that when he was finally given a breathalyzer test, eleven to twelve hours after he was first confronted by his supervisor, his blood alcohol level still registered at 0.065% to 0.07%. This is not a close call.***

Ramey v. Potomac Elec. Power Co., 468 F. Supp. 2d 51, 57 n.7 (D.D.C. 2006) ("Ramey I") (emphasis added). This ruling was summarily affirmed by the D.C. Circuit on December 18, 2006. See MTD Mem. at 2, 14 & Ex. 2.[3]

Then, in an injunction proceeding filed by Pepco in Superior Court, Plaintiff filed counterclaims against the company, asserting claims for alleged violations of his civil rights, harassment, threats, trespass, intimidation, "illegal entrance of mailbox," conspiracy, and intentional and negligent infliction of emotional distress. The Superior Court dismissed with prejudice each of Plaintiff's counterclaims. Ramey v. Potomac Elec. Power Co., No. 06CA5435 (D.C. Super. Ct.) ("Ramey II"), attached hereto as Ex. A. In addition, as part of its rulings on Pepco's defamation claims, the Court found that Plaintiff's statements that Pepco altered his test results, used an unlicensed technician to test him, and kidnapped him were false. MTD Mem. at 14-16 & Exs. 7-8.

Plaintiff then filed two additional lawsuits against Pepco in early 2007 asserting various state tort claims challenging Pepco's testing. The first suit alleged that Pepco and its counsel engaged in a conspiracy to defame him and to fabricate evidence and make false allegations

[3] Plaintiff also filed two workers' compensation claims and an unemployment compensation claim against Pepco.

against him. Plaintiff alleged in his second suit that Pepco kidnapped and falsely imprisoned him during its 2003 testing. Pepco filed motions to dismiss that established that the claims were untimely and barred by the doctrine of collateral estoppel. Both of the cases were dismissed by the Superior Court. Ramey v. Potomac Elec. Power Co., No. 07CA1625B (D.C. Super. Ct.) ("Ramey III"), attached hereto as Exs. B & C; Ramey v. Potomac Electric Power Co. No. 07CA2419B, (D.C. Super. Ct.) ("Ramey IV") attached hereto as Ex. D; MTD Mem. at 2, n.1.

Plaintiff, however, remained undaunted and continued to file lawsuits raising these same claims and factual allegations. In the past three months alone, Plaintiff filed three more lawsuits against Pepco and its counsel: (1) the current action pending before this Court alleging wrongful discharge; (2) another action pending before this Court alleging that his testing violated the federal Motor Carrier Act; and (3) two separate actions for defamation pending in Superior Court against Pepco's counsel. See MTS. Mem. at 2-3; Ramey v. Winston & Strawn, LLP, et. al., No. 08CA0822B (D.C. Super. Ct. filed Feb. 4, 2008) ("Ramey VII"), attached hereto as Ex. E.[4] Plaintiff has also filed in the past three months lawsuits against the Department of Transportation ("DOT"), the Department of Employment Services, and the International Brotherhood of Electrical Workers, purporting to assert claims of slander, deceit, and misrepresentation related to the handling of his grievances and unemployment proceedings.

[4] In addition to his wrongful discharge claim, Plaintiff filed in this case what he styled a "Motion to Discontinue" that purported to assert defamation claims against Pepco for its statements and representations in the parties' various court proceedings. Mot. to Discontinue (filed Jan. 8, 2008). The very same day that he filed his opposition to the motion to strike, he filed an identical defamation complaint in Superior Court. MTS Opp. at 1, 3; Ex. E.

## III. ARGUMENT

### A. Federal Courts Have The Authority To Sanction Parties And Their Counsel

Federal Courts are authorized under Rule 11 of the Federal Rules of Civil Procedure and their inherent authority to sanction parties and their counsel who file baseless claims or pursue litigation for an improper purpose. Rule 11 prohibits filings that are frivolous, unsupported by evidence, or presented for an improper or harassing purpose. Fed. R. Civ. P. 11(b), see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Rule 11 requires litigants and their counsel to perform a "reasonable inquiry" of the facts and law before signing and filing a pleading, motion, or other paper to the court. Fed. R. Civ. P. 11(b).

In other words, the Rule requires litigants to "'stop-and-think' before initially making legal or factual contentions," and prohibits them from merely "drop[ping] papers into the hopper and insist[ing] that the court or opposing counsel undertake bothersome factual and legal investigation." Fed. R. Civ. P. 11, advisory comm. notes (1993 amendments); see also Land v. Chicago Truck Drivers Union, 25 F.3d 509, 517-18 (7th Cir. 1994). Once a district court finds that a party filed a pleading or paper that was not well grounded in fact, not warranted by law or interposed for an improper purpose, "Rule 11 ***requires*** that sanctions of some sort be imposed." Reynolds v. U.S. Capitol Police Bd., 357 F. Supp. 2d 19, 24 (D.D.C. 2004) (Leon, J.) (quoting Rafferty v. NYNEX Corp., 60 F.3d 844, 852 (D.C. Cir. 1995)) (emphasis in original).

Federal courts have not hesitated to impose Rule 11 sanctions on a party who makes baseless allegations or files a claim or motion for an improper purpose.[5] For instance, in Forti v.

[5] See also Falice v. Mullen, 2004 WL 1249140 (D.C. Cir. 2004) (revoking appellant's *in forma pauperis* status and dismissing case because appellant had brought at least three civil actions or appeals that were dismissed because they were frivolous, malicious, or failed to state a claim); Marina Management Servs. v. Vessel My Girls, 202 F.3d 315 (D.C. Cir. 2000) (district court

W.C. & A.N. Miller Dev. Co., 2006 WL 3191233 (D.D.C. Nov. 2, 2006), a pro se plaintiff made repeated filings that were barred by collateral estoppel and that contained a litany of baseless charges and factual mischaracterizations. Id. at *1. Concluding that her pleadings reflected a "calculated indifference" to prior rulings, and that her claims were "so clearly barred by the preclusion doctrine, her bad faith and intent to harass were apparent," the Court impose Rule 11 sanctions and ordered the plaintiff to pay $15,000 in sanctions to the defendants. Id. at **1-2.

A court may also rely on its inherent powers to impose sanctions where the rules do not otherwise authorize the Court to address a party's misconduct. Mikkilineni v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 271 F. Supp. 2d 151, 154 (D.D.C. 2003). Courts are vested with such power so that they may "protect[] the due and orderly administration of justice and . . . maintain[] the authority and dignity of the court." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). Although severe sanctions require a clear showing that a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, the court may use its inherent powers to take sharp measures and "fill the gap" not addressed by the rules. Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991); see also Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469, 1477 (D.C. Cir. 1995).

Pro se plaintiffs are not immune to the imposition of sanctions pursuant to Rule 11 or the Court's inherent authority. As this Court noted in Mikkilineni:

> although the D.C. Circuit recognizes that *pro se* litigants are untrained in the law and consequently holds them to less stringent standards than litigants counseled by attorneys, sanctions against a *pro se* litigant may be warranted under certain circumstances. For example, sanctions may be warranted when the *pro se* party who abuses the legal process is acquainted with the rules of the judicial process and the consequences of violating the rules.

---

properly sanctioned plaintiff whose latest filing in contentious and prolonged litigation was designed primarily to harass).

271 F. Supp. 2d at 155 (dismissing complaint of pro se plaintiff who had multiple actions pending against former employer that were virtually identical to an earlier action that had already been dismissed); see also Fed. R. Civ. P. 11, advisory comm. notes (1993 amendments) (pro se litigants also "have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1 [to secure the just, speedy and inexpensive determination of every action and proceeding]").

As explained below, Pepco is entitled to sanctions against Plaintiff under these well established standards.

**B. Plaintiff Should Be Sanctioned For His Repeated, Baseless Filings**

Plaintiff should be sanctioned pursuant to Rule 11 and the Court's inherent authority because his filings consist of claims and allegations that he knows are patently false and legally untenable. As this Court recognized in Reynolds,

> where a party reiterates arguments that have already been unequivocally rejected by the Court, and its pleadings reflect a deliberate decision to ignore an opinion of the Court which is the controlling law of the case, sanctions are warranted under Rule 11.

357 F. Supp. 2d at 24 (emphasis in original). Much like the Plaintiff in Reynolds, in the various filings that Plaintiff has submitted to this Court in this case, Plaintiff reasserts allegations that prior tribunals have rejected, dismissed, or found demonstrably false.

In his Complaint and his "Motion To Discontinue," for example, Plaintiff claims that he was not intoxicated and that his alcohol test "was forensically invalid" and was "fixed" by Pepco. Comp. at ¶¶ 6, 8; Mot. to Discontinue at ¶ 3. In his opposition to Pepco's motion to dismiss, he claims that "Pepco contracted an unlicensed[d] allege[d] technician to conduct the test" and that Pepco violated DOT regulations in various ways. MTD Opp. at ¶¶ 3, 9, 11. In his "Reply" and his second "Opposition," which he filed without leave of Court, Plaintiff again alleges that the

test was altered, invalid, and improperly administered in violation of DOT rules, resulting in his "wrongful termination." MTD Surreply at ¶¶ 1-3, 8; Second Opp. at ¶ 4.

As Pepco explained in its motion to dismiss and in its motion to strike Plaintiff's "Motion to Discontinue," these claims are legally invalid. MTD Mem. at 3-16; MTS Mem. at 4-7. Moreover, they are barred by the doctrine of collateral estoppel because each of the multiple tribunals that have reviewed Plaintiff's numerous claims and allegations has rejected these precise allegations. See, e.g., MTD Mem. at 12-16, Exs. 5-8; Ramey I, 468 F. Supp. at 57 n.7. In two grievance arbitrations, two proceedings before the Department of Employment Services, and four civil cases challenging his testing, Plaintiff's allegations concerning his testing by Pepco have been rejected. See supra at 2-4.

For instance, ***none*** of the tribunals have credited his claim that he was not intoxicated at the time that he was tested. In fact, they explicitly found that Plaintiff was "visibly inebriated," "intoxicated," and "drunk" at the time of his testing. See Ramey v. Potomac Elec. Power Co., OHA No. 05-318 at 7 (Mar. 17, 2006), attached hereto as Ex. F; Ramey I, 468 F. Supp. 2d at 57 n.7. Similarly, they uniformly rejected Plaintiff's allegations that Pepco altered his test forms, used an uncertified technician and violated DOT laws in administering Plaintiff's blood alcohol test. See, e.g., MTD Mem., Ex. 5 at Exs. A-B & Ex. 6. Additionally, they found that Pepco properly disciplined and terminated Plaintiff. See, e.g., MTD Mem., Exs. 5-8; Ramey I, 468 F. Supp. at 57, n.7.

Moreover, each tribunal that has ruled on the legal claims asserted by Plaintiff in these cases has rejected them on a motion to dismiss. In Ramey I, this Court dismissed with prejudice Plaintiff's tort, discrimination and retaliation claims challenging his testing, discipline and termination. 468 F. Supp. at 60. In the three Superior Court proceedings, the Court dismissed

Plaintiff's conspiracy and defamation claims based on Pepco's alleged alteration of his test results and defamatory statements in its filings, and his tort claims challenging Pepco's actions during his testing. See supra at 3-4.

These rulings put Plaintiff on notice that his legal claims and factual allegations were baseless and legally invalid. Nevertheless, Plaintiff filed this lawsuit (and numerous others) reasserting the very same rejected factual allegations and legal claims. As in Reynolds, 357 F. Supp. 2d at 25, Plaintiff's reassertion of arguments and claims that have already been rejected reflects "a calculating indifference . . . to the prior rulings . . . [which] constitutes an intent to bring claims in bad faith." His decision to flout the Rules of this Court and to disregard the rulings against him compels an award of sanctions.

**C. Plaintiff Has Filed Repeated, Frivolous Suits And Filings To Harass And Burden Pepco**

The imposition of sanctions is also warranted because Plaintiff filed these lawsuits for the improper purpose of harassing and burdening Pepco and its counsel.

It is clear that Plaintiff's persistent filings serve no purpose but to harass and burden Pepco and to somehow force it to settle with Plaintiff. As explained above, since 2003, Plaintiff has engaged in a veritable "war" with Pepco through various judicial and administrative fora. Plaintiff has filed eleven separate proceedings challenging his testing, discipline and termination and the actions taken by Pepco and its counsel in responding to his lawsuits and defamatory leafleting. In the past three months alone, Plaintiff has filed four separate complaints against Pepco and its counsel and eight additional filings, including a "motion to discontinue" and surreplies that were not authorized or contemplated by the Rules.

These repeated, baseless filings could not serve any legitimate purpose. Indeed, it is clear that Plaintiff is only continuing to file them in order to burden and harass Pepco so that it

will settle with him. Throughout the cases, Plaintiff has repeatedly complained that Pepco would not entertain settlement discussions with him and has sought the intervention of the Courts in his efforts.[6] Plaintiff should not be allowed to continue his campaign of burdening and harassing Pepco and its employees and counsel and should be sanctioned for his willful and egregious misconduct.. See, e.g., Forti, 2006 WL 3191233 at *1 (imposing sanctions on pro se plaintiff for repeated filings made in bad faith and with intent to harass); Reynolds, 357 F. Supp. 2d at 26.

**D. Plaintiff Filed Papers Replete With Unfounded And Offensive Personal Attacks On Pepco, Its Counsel, And The Judges Who Have Ruled On His Claims**

This Court should also sanction Plaintiff because he has repeatedly made offensive, personal attacks on Pepco, its counsel, and the tribunals that have ruled on his claims.

Recognizing that his substantive allegations lack merit, Plaintiff has resorted to making ad-hoc, scandalous attacks on Pepco and its counsel in his pleadings, motions, and other filings. In his Opposition to Pepco's motion to dismiss, for example, Plaintiff dispenses with any effort to substantiate the merits of his claim and instead strings together a series of accusations, stating that:

- "[Pepco's] attorneys continue to lie to the courts to cover up federal violations that were violated"

---

[6] In Ramey II, for example, Plaintiff opposed Pepco's request to continue mediation, demanding that Pepco be required to settle with him. See Ramey II, Opp. to Pepco's Mot. to Continue Mediation (D.C. Super. Ct. filed Mar. 13, 2007), attached hereto as Ex. G. Plaintiff complained in other filings that Pepco had declined to settle his meritless claims, stating "[o]n two different occasions, [Pepco attorneys] discussed. . . settlement figures in the six digits for Plaintiff to discontinue the suing of Pepco and attorneys, but after a week and hours of an agreed amount on a settlement, [the attorneys] withdrew after Plaintiff would not except [sic] pocket change." Ramey III, Opp. at ¶ 5 (D.C. Super. Ct. filed May 9, 2007), attached hereto as Ex. H. Similarly, in his recent "motion to discontinue," Plaintiff again complains about Pepco's refusal to settle with him in the "low millions," asserting that "[t]he court must decide whether or not the defendant is proven gilty [sic] in negotiating a settlement with Plaintiff." Mot. to Discontinue at 2.

- "[T]he attorneys are corrupt [and] deceitful . . .."

- "Lying and manipulating is their defense and no one is exempt from their prevailing. . . .."

- "Pepco and its attorneys] have no remorse for others['] well being and no respect for the law."

Opp. at ¶¶ 3, 10-12.

Similarly, in his most recent filings before this Court, Plaintiff continues to lodge personal attacks against Pepco's counsel, with increased fervor and intensified rhetoric, stating:

- "Counsel is a cunning, manipulative [sic], deceitful attorney and expect[s] Plaintiff to crawl under a rock in silence. . . .."

- "Counsel is knowingly and willfully covering up lies by lying to the court." Id. at ¶ 5.

- "It seems as though Counsel may have some sort of problem dealing with reality." Id. at ¶ 2.

- "Counsel's ego will not allow her to throw in the towel . . .. Counsel is probably thumbing her nose up at the courts for allowing Plaintiff to file."

Third Opp. at ¶¶ 3, 5; Ramey v. Potomac Elec. Power Co., No. 07CA2340 ("Ramey VI"), Docket Entry 8 (D.D.C. filed Feb. 1, 2008).

Equally egregious and offensive are Plaintiff's allegations that arbitrators and judges actively took part or conspired in some way in these fictionalized violations of law. Plaintiff's suggests such collusion throughout his filings, asserting, for instance, that "[t]he arbitrators even destroyed the tapes of the hearing days after their decision to prevent Plaintiff to appeal" and "everyone in every tribunal was part of the conspiracy to discredit Plaintiff as an alcoholic or was lied to or mislead by counsel." MTD Surreply at ¶ 2; MTS Opp. at ¶¶ 4-5. Additionally, he accuses Pepco's counsel of soliciting this Court's assistance to circumvent the law, claiming that

"[c]ounsel has already exposed to the Court that she will try to manipulate to prevail and counsel also expect the court to assist her in doing so . . .." Plaintiff's Reply at ¶ 10.

These offensive and scandalous accusations have absolutely no basis and have no place in pleadings and papers filed in federal court. Plaintiff's inability to plead a legally cognizable claim against Pepco does not license him to attack Pepco or its counsel, or to question the integrity of the judicial system. Plaintiff's repeated, false statements clearly compel the imposition of sanctions. See, e.g., McCreary v. Heath, 2005 WL 975736, * 2 (D.D.C. 2005) (pro se plaintiff was sanctioned and enjoined from making further filings as a consequence of repeated filings and escalating rhetoric and baseless accusations).

**E. This Court Should Sanction Plaintiff Pursuant To Rule 11 And The Inherent Authority of The Court**

Once a violation of Rule 11 has been established, it is within the court's broad discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); see also Fed. R. Civ. P. 11, advisory comm. notes (1983 amendments). Among the factors that this Court may consider in determining the extent of the sanction to impose are: (1) "[w]hether the improper conduct was willful, or [merely] negligent;" (2) "whether it was part of a pattern of activity, or an isolated event;" (3) "whether the person has engaged in similar conduct in other litigation;" and (4) "what effect [the improper conduct] had on the litigation process in time or expense." Fed. R. Civ. P. 11, advisory comm. notes (1993 amendments).

Plaintiff's violations of Rule 11 have been willful, repetitive, dilatory, and part of a pattern of harassment that he has employed throughout his many proceedings against Pepco. Plaintiff reasserted his baseless allegations after being put on notice by ***multiple*** adjudicative bodies that his claims lacked merit. Despite the virtual treatise of holdings that Pepco did not

alter Plaintiff's test, violate any law, defame him or improperly discipline and terminate him, Plaintiff simply took his own preferred (but fictional) view of the law and chose to reassert his claims and to resort to false and scandalous accusations. As a sanction for this willful conduct, this Court should dismiss Plaintiff's claims with prejudice and award Pepco the fees and costs that it has incurred in defending this suit. See Reynolds, 357 F. Supp. 2d at 24, 26 (plaintiff and counsel required to pay monetary sanctions given history of litigation abuses).[7]

Consistent with its inherent authority, this Court should also enjoin Plaintiff from filing further lawsuits against Pepco or, at the very least, should require him to seek express leave from the court before commencing suit. It is well-settled that a court may employ injunctive remedies to protect the integrity of the courts. In McCreary v. Heath, 2005 WL 975736, **2-3 (D.D.C. 2005), for instance, this Court enjoined a pro se plaintiff from filing further motions or lawsuits without express leave of the court. The court chastised the plaintiff for filing his lawsuit despite the dismissal of two similar claims and for "flood[ing] the judicial system with duplicative, unduly voluminous, and hyperbolic filings." Id. at **1-2. Noting that plaintiff's conduct and the statements in his filings demonstrated that adverse rulings were insufficient to deter his baseless filings, the Court enjoined the plaintiff from filing any further motions or suits without express leave of the court, and relieved the defendants of their obligation to respond to any of plaintiff's filings absent an express court order. Id. at *2.[8]

---

[7] See also John Akridge Co. v. Travelers Cos, 944 F. Supp. 33, 34 (D.D.C. 1996) (ordering plaintiffs to reimburse defendant for "full cost" of defending baseless action that attempted to circumvent prior rulings against plaintiffs); Washington Bancorporation v. Said, 812 F. Supp. 1256, 1275 (D.D.C. 1993) (awarding monetary sanctions and recovery of attorney's fees and costs incurred to defend against multiple claims that were insupportable as a matter of law).

[8] See also Martin-Trigona v. United States, 779 F.2d 72 (D.C. Cir. 1985) (upholding injunction preventing litigious pro se individual from filing further suit without express leave, and requiring him to provide a list of all cases previously filed by him, copies of the complaints in those cases, and certified records of their disposition); Urban v. United Nations, 768 F.2d. 1497, 1500 (D.C.

The imposition of this sanction is warranted in this case as well. It is clear that a lesser sanction would not alone deter Plaintiff from filing additional frivolous and baseless claims and motions. Plaintiff has not been deterred by numerous rulings, including a very clear and direct findings from this Court in Ramey I, rejecting his allegations and claims, or by Pepco's filings showing that his current claims are baseless and barred by prior rulings. Indeed, these rulings seemed to have done nothing but inflame Plaintiff further, resulting in more and more frequent filings and escalating attacks on Pepco and its counsel. Thus, consistent with Chambers and Mikkilineni, this court should require Plaintiff to seek leave of the court before filing any lawsuit or motion against Pepco or its employees or attorneys in state or federal court.[9]

## IV. CONCLUSION

For the foregoing reasons, Pepco's motion for sanctions should be granted, and the Court should: (1) dismiss Plaintiff's claims in their entirety with prejudice; (2) order Plaintiff to reimburse Defendant for the reasonable fees and expenses that it incurred in responding to his filings; and (3) require Plaintiff to seek express leave of the Court, as outlined above, before filing any further suits or motions against Pepco.

---

Cir. 1985) (enjoining plaintiff from filing any action in any federal court without first obtaining leave to file and certifying that the claims are: (1) new claims never before raised or disposed of, (2) not frivolous or taken in bad faith, and (3) accompanied by the injunctive order then issued); see also In re Green, 669 F.2d 779, 787 (D.C. Cir. 1981) (per curiam).

[9] In seeking leave, Plaintiff should be required to submit with his motion for leave: (1) a copy of the sanctions order; (2) copies of all of Plaintiffs prior complaints and the rulings on them; and (3) all evidence that supports his claims against Pepco or its employees or counsel.

Respectfully submitted,

/s/
Connie N. Bertram (Bar No. 435840)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Jill D. Flack (Bar No. 420020)
Associate General Counsel
Potomac Electric Power Company
701 9th Street, NW
Washington, D.C. 20068
(202) 872-2756
(202) 872-3281 (fax)

Counsel for Defendant

March __, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the __ day of March 2008, I caused a true and correct copy of the foregoing Motion for Sanctions and Memorandum in Support to be served by first class mail, postage prepaid, on the following:

Benjamin Ramey
4251 Clay Street, NE
Washington, DC 20019

/s/
Connie N. Bertram

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BENJAMIN RAMEY,<br><br>Plaintiff,<br><br>v.<br><br>POTOMAC ELECTRIC POWER COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-2132 (RJL) |

**ORDER**

Upon consideration of Defendant 's Motion For Sanctions, and the parties' briefing on it, the Court orders as follows:

Defendant's Motion to For Sanctions is GRANTED, and

Plaintiff's Complaint is DISMISSED with prejudice in its entirety, and

Defendant is AWARDED reasonable costs and fees, and

Plaintiff is enjoined from filing further suit against Defendant Pepco without express leave of the Court.

ORDERED this ___ day of _____________.

_________________________________
United States District Court Judge

Case No. 07-2132 (RJL)

# Exhibit B

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

BENJAMIN RAMEY,

Plaintiff,

v.

POTOMAC ELECTRIC POWER CO., et al.,

Defendants.

Case No.: 06CA5435
Judge Judith E. Retchin
Next Event:
Scheduling Conference
October 16, 2006

**ORDER**

UPON CONSIDERATION of Defendants' unopposed Motion to Dismiss, ~~any Opposition thereto,~~ and the record herein, it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED as to all Defendants; and Benjamin Ramey's Counterclaim is dismissed with prejudice.

ENTERED this 6th day of Oct, 2006.

Judith E. Retchin
District of Columbia Superior Court Judge

To be delivered to:

Connie N. Bertram
M. Carter DeLorme
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006

Attorneys for Plaintiffs/Counter-Defendants

Benjamin Ramey
4251 Clay Street, NE
Washington, DC 20019

Defendant/Counterclaimant

Order docketed 10/6/06 and copies mailed from chambers to Parties indicated above on 10/10/06.



Case No. 07-2132 (RJL)

# Exhibit C

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **BENJAMIN RAMEY,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **Case No. 2007 CA 001625 B** |
| **JILL D. FLACK, et al,** | : | **Judge Melvin Wright** |
| | : | **Next Event: Initial Conference** |
| **Defendants. 1** | : | **June 22, 2007** |

**ORDER**

UPON CONSIDERATION of the unopposed Motion to Dismiss on behalf of defendants Jill D. Flack, Connie N. Bertram, M. Carter DeLorme and David Duarte, any opposition thereto, and the entire record herein, it is hereby on this 11th day of May 2007,

ORDERED that Defendants' Motion to Dismiss is GRANTED; and it is

FURTHER ORDERED that the Complaint of plaintiff Benjamin Ramey is dismissed with prejudice as to defendants Flack, Bertram, DeLorme and Duarte only. It is

FURTHER ORDERED that the June 22, 2007 Initial Scheduling Conference will remain on the calendar for the remaining defendants O'Connell, PEPCO and Winston & Strawn LLC.

Melvin R. Wright

MELVIN R. WRIGHT, ASSOCIATE JUDGE

Case No. 07-2132 (RJL)

# Exhibit D

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **BENJAMIN RAMEY,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 2007 CA 001625 B** |
| | : | **Judge Melvin Wright** |
| **JILL D. FLACK, ET AL.,** | : | |
| **Defendants.** | : | |

# ORDER

UPON CONSIDERATION of Benjamin Ramey's Motion to Vacate Dismissal and Amend Complaint, Potomac Electric Power Co. and Winston & Strawn LLP's opposition thereto, and the entire record herein, it is hereby, on this 17th day of July 2007,

ORDERED that Benjamin Ramey's Motion to Vacate Dismissal and Amend Complaint is DENIED.

Melvin R. Wright

Melvin Wright
District of Columbia Superior Court Judge

Copies to Be Delivered to:

Benjamin Ramey
4251 Clay Street, NE
Washington, DC 20019

Connie N. Bertram
M. Carter DeLorme
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006

Jill D. Flack
Pepco Holdings, Inc.
701 9th Street, N.W., Suite 1100
Washington, D.C. 20068

Case No. 07-2132 (RJL)

# Exhibit E

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**BENJAMIN RAMEY,**

**Plaintiff,**

**v.**

**POTOMAC ELECTRIC POWER CO., et al.,**

**Defendants.**

**Case No. 07CA2419B**
**Judge Jennifer M. Anderson**
**Next Event: Initial Conference**
**July 13, 2007**

**ORDER**

UPON CONSIDERATION of Defendants' Motion to Dismiss, the plaintiff's opposition thereto, and the entire record herein, it is this 11th day of May 2007 hereby

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that the Complaint of Plaintiff Benjamin Ramey is **DISMISSED WITH PREJUDICE.**

Jennifer M. Anderson
Associate Judge

Case No. 07-2132 (RJL)

# Exhibit F

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

FEB 04 2008

BENJAMIN RAMEY
Vs.
WINSTON AND STRAWN, LLP

C.A. No. 2008 CA 000822 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge THOMAS J MOTLEY
Date: February 1, 2008
Initial Conference: 9:30 am, Friday, May 23, 2008
Location: Courtroom 112
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

# ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

**CA Form 1**

# Superior Court of the District of Columbia

**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Room JM-170**
**Washington, D.C. 20001 Telephone: 879-1133**

BENJAMIN RAMEY

*Plaintiff*

vs. Civil Action No. 000822-08

WINSTON + STRAWN LLP

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

BENJAMIN RAMEY
Name of Plaintiff's Attorney

4251 CLAY ST. N.E.
Address
WASH. D.C. 20019

(202) 213-8154
Telephone

By Adrienne J. [illegible]
Deputy Clerk

Date ~~January 31, 2008~~ 02/01/08

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

BENJAMIN RAMEY PRO-SE
4251 CLAY ST. N.E.
WASH. D.C., 20019

*Plaintiff*

*vs.*

CIVIL ACTION No. 0000822-08

WINSTON + STRAWN LLP
CONNIE BERTRAM
1700 K ST. N.W.
WASH. D.C., 20006

*Defendants*

RECEIVED
Civil Clerk's Office
FEB 01 2008
Superior Court of the District of Columbia
Washington, D.C.

**COMPLAINT**

1. **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

SEE ATTACHMENTS

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $** 5,000,000.00 **with interest and costs.**

(202) 213-8154
**Phone:**

**DISTRICT OF COLUMBIA, SS**

BENJAMIN RAMEY, **being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the paintiff, exclusive of all set-off and just grounds of defense.**

Benjamin Ramey
**(Plaintiff Agent)**

**Subscribed and sworn to before me this** 31st **day of** January **20** 08.

[signature]
**(Notary Public/Deputy Clerk)**

FORM CV-1013/ Nov. 00

ATTK

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

BENJAMIN RAMEY PRO-SE,
4251 CLAY ST. N.E.
WASH. D.C., 20019
PLAINTIFF,

0000822-08

V.

WINSTON + STRAWN LLP.,
CONNIE BERTRAM, ESQ.,
1700 K ST. N.W.
WASH. D.C., 20006,
DEFENDANT.

COMPLAINT

DEFAMATION OF CHARATER

1. FOR ALMOST 4 YEARS AND STILL TODAY, PLAINTIFF, BENJAMIN RAMEY HAS BEEN ACCUSED OF BEING AN ALCOHOLIC, BY HIS FORMER EMPLOYER, POTOMAC ELECTIC POWER COMPANY (PEPCO), WITH THE DISHONEST CONSISTANT SUPPORT OF COUNSEL, BERTRAM.

2. PLAINTIFF WAS TERMINATED ON NOV. 04 AFTER 13 YEARS OF SERVICE WITH PEPCO AND HAS YET BEEN ABLE TO ESTABLISH A CAREER SIMULAR OR CLOSE.

3. FROM START UNTIL TODAY PLAINTIFF HAS BEEN DEMONSTRATING HIS INNOCENSE IN NUMEROUS LITIGATIONS, BUT COUNSEL PREVAILED, EVEN THOUGH PLAINTIFF SHOWED PROOF.

4. COUNSEL HAD FIRST HAND KNOWLEDGE THAT PLAINTIFF'S ALCOHOL TEST WAS ALTERED AND FOR THAT REASON, IT SHOULD HAVE BEEN HER RESPONSIBILITY TO INVESTIGATE PLAINTIFF'S ALLEGATIONS BEFORE SHE CONTINUED TO DEFAME PLAINTIFF'S CHARATER, BUT SHE CHOSE NOT TO DO SO, FOR THE BEST, FOR HER CLIENT, PEPCO.

5. PLAINTIFF HAS TAKEN A SERIOUS OF LOST FOR THE DEFAME OF HIS CHARATER, MAINLY HIS HOME OF 9 YEARS, OF WHICH HE HAS TO VACATE ON FEB. 22, 2008.

6. COUNSEL AGGRESSIVELY DISPUTED PLAINTIFF'S EVIDENCE BY MISLEADING THE COURTS AFTER HAVING KNOWLEDGE THAT THE ALCOHOL TEST WAS ALTERED TO DISCREDIT PLAINTIFF'S CLAIMS AGAINT PEPCO. FOR NEARLY 4 YEARS PLAINTIFF HAS SUFFERED A GREAT DEAL AND COUNSEL IS FULLY RESPONSIBLE AND NEED TO BE HELD ACCOUNTABLE.

7. THROUGH THE YEARS AND MOST RECENTLY, COUNSEL IS STILL REPRESENTING FALSE ALLEGATIONS, KNOWINGLY AND WILLINGLY TO PROTECT PEPCO.

8. PEPCO IS A VERY LARGE CORPORATION THAT HOUSES INVESTIGATORS, SO THERE IS NO EXCUS FOR COUNSEL'S BEHAVIOR.

EX. 1, TEST FORM THAT COUNSEL HAD KNOWLEDGE OF AS ALTERED AND CONTINUED TO DEFAME PLAINTIFF'S CHARATER.

EX. 2, BREAK DOWN OF THAT TEST CONCLUDED BY AN EXPERT ON ALCOHOL TESTING.

## DEMAND

PLAINTIFF REQUEST TO BE COMPENSATED FOR COMPENSATORY AND PUNITIVE DAMAGES IN THE AMOUNT OF 5,000,000.00.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I CAUSED A TRUE AND CORRECT COPY OF THE FOREGOING MOTION TO BE SERVED BY FIRST CLASS MAIL, POSTAGE PRE-PAID ON THE 31 DAY OF JAN. 2008 ON THE FOLLOWING:

CONNIE BERTRAM, ESQ.
1700 K ST. N.W.
WASH. D.C. 20006

RESPECTFULLY SUBMITTED,
Benjamin Ramey
BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C. 20019
(202) 213-8154

Ex. 1

# Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3)*

CUT HERE

**STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A. Employee Name BENJAMIN F. RAMEY
(PRINT) (First, M.I., Last)

B. SSN or Employee ID No. 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

C. Employer Name PERCO
Street 701 9th St NW
City, ST ZIP, WASHINGTON DC 20001

DER Name and Telephone No. NEBUSSIE BIRRATU (202) 872-36
DER Name DER Phone Number

D. Reason For Test: ☐ Random ☒ Reasonable Susp ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

[signature] Benjamin F. Ramey
Signature of Employee Date 8 / 30 / 0 Month Day Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(The technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☒ BAT ☐ STT DEVICE: ☐ SALIVA ☒ BREATH* ☐ 15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|---|---|---|---|---|---|
| | | | | | |

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

Remarks:

Mid-Atlantic Drug Testing
Alcohol Technician's Company

13615 Bent Tree Circle
Company Street Address

THOMAS HYDE
(PRINT) Alcohol Technician's Name (First, M.I., Last)

Centreville, VA 20121 (703) 802-22
Company City, State, Zip Phone Number

[signature]
Signature of Alcohol Technician Date 8 / 30 / 03 Month Day Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

...tify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand ...t I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

[signature] Benjamin F. Ramey
Signature of Employee Date 8 / 30 / 03 Month Day Year

---

BREATHALYZER 7410
SERIAL # : ARHK-

BREATHALYZER PRIN
SERIAL # : ARHL-
PRINTER LOG #: 00

MM.DD.YY HH:MM
08.30.03 11:09

*******************
* TEST NUMBER: 012
*
* AIR-BLANK TEST:
* 0.000 PERCENT
*
* BREATH TEST:
* 0.070 PERCENT
*******************
DATA ACCEPTED

BREATHALYZER 7410
SERIAL # : ARHK-10

BREATHALYZER PRINTER
SERIAL # : ARHL-049
PRINTER LOG #: 00502

MM.DD.YY HH:MM
08.30.03 11:32

*******************
* TEST NUMBER: 01253
*
* AIR-BLANK TEST:
* 0.000 PERCENT B
*
* BREATH TEST:
* 0.065 PERCENT B
*******************

DRY-GAS ACCURACY TEST

BREATHALYZER 7410
SERIAL # : ARHK-1031
TEST # : 01254

BREATHALYZER PRINTER
SERIAL # : ARHL-0498
PRINTER LOG #: 00503

MM.DD.YY HH:MM
08.30.03 11:59

*******************
* LABELED BAC VALUE:
* 0.040 PERCENT BAC
*
* CORRECTED BAC VALUE:
* 0.40 PERCENT BAC
*
* ACCURACY TEST RESULT:
* 0.039 PERCENT BAC
*******************
TECHNICIAN SIGNATURE:
[signature]

Ex. 2

**Bryan W. Brown**
Attorney at Law

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com

To: William Bach
From: Bryan W. Brown
Re: Benjamin Ramey
Date: July 19, 2007

I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of the approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.

Case No. 07-2132 (RJL)

# Exhibit G

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Department of Employment Services**
**Labor Standards Bureau**

**Office of Hearings and Adjudication**
**Administrative Hearings Division**

(202) 671-2233-Voice
(202) 673-6938-Fax

In the Matter of

BENJAMIN RAMEY,

Claimant,

v.

POTOMAC ELECTRIC POWER COMPANY,

and

CHC,

Employer/Carrier.

OHA No. 05-318
OWC No. 608087

---

Appearances:

MARIA C. MENDOZA, ESQUIRE
For the Claimant

KEVIN J. O'CONNELL, ESQUIRE
For the Employer/Carrier

Before:

AMELIA G. GOVAN
ADMINISTRATIVE LAW JUDGE

## COMPENSATION ORDER

### STATEMENT OF THE CASE

This proceeding arises out of a claim for workers' compensation benefits filed pursuant to the provisions of the District of Columbia Workers' Compensation Act of 1979, as amended, D.C. Code 2001, §§32-1501 *et seq.* (hereinafter, the "Act").

After timely notice, a full evidentiary hearing was held on August 17, 2005 before Amelia G. Govan, Administrative Law Judge. Benjamin Ramey (hereinafter, claimant) appeared in person and by counsel. Potomac Electric Power Company[PEPCO]/CHC (hereinafter, employer) appeared by counsel. Claimant testified on his own behalf. Lamar L Dudley also testified on claimant's behalf. Gregory M. Johnson, Sr., Thomas Hyde, Negussie Birratu and David Duarte testified on behalf of employer. Claimant Exhibit (hereinafter, CX) Nos. 1 - 6 and Employer Exhibit (hereinafter, RX) Nos. 1 -

10, described in the Hearing Transcript (hereinafter, HT) were admitted into evidence. The official record closed on September 16, 2005.[1]

## ISSUES

1. Whether there was an accidental injury on or about August 31, 2003 which arose out of and in the course of claimant's employment.[2]

2. Whether there was timely notice of the alleged work injury.

3. Whether the claim for benefits from the alleged work injury was timely filed.

4. The nature and extent of disability.[3]

## CLAIM FOR RELIEF

Claimant seeks an award under the Act for temporary total disability benefits from November 3, 2003 to the present and continuing, with interest, as well as causally related medical treatment.

## BACKGROUND

Claimant worked as an conduit installer for employer for thirteen years. He allegedly sustained a post-traumatic stress injury on or about August 31, 2003 when he was accused of being intoxicated at work, constrained to ride with three co-workers to several Virginia medical facilities without being allowed to eat, drink, or use the restroom, then given a Breathalyzer and urine tests more than eleven hours after the starting time of his work shift.

Claimant was placed on a five day suspension because the Breathalyzer test results were positive. He returned to work on September 2, 2003, performing both full duties and overtime storm duties until September 30, 2003; that day, he was placed on Decision Making Leave and placed in a three year probationary status due to the events of August 30, 2003.

Claimant continued to work while participating in a mandatory alcohol rehabilitation program for three hours each evening. He was discharged from the program on October 27, 2003 for noncompliance. Claimant sought psychiatric treatment on November 3, 2003, and was diagnosed with post traumatic stress syndrome.

## FINDINGS OF FACT

The parties stipulated, and I find, claimant's employment is principally localized in the District of Columbia; there is an employer/employee relationship present pursuant to the Act; there have been no voluntary payments of compensation; and, the average weekly wage is $942.23.

Based upon the evidence of record, I find the following to be facts.

---

[1] The record was held open to afford claimant an opportunity to file additional documentation on the issues of timely notice and timely claim. To date, the official record does not reflect filing of any post-hearing evidence.

[2] It is clear from review of the record in its entirety that the actual date alleged is August 30, 2003, the only date referred to in the formal hearing or deposition testimony and the only date which appears in contemporaneous documents record documents.

[3] Employer has raised the defenses of voluntary limitation of income, pursuant to D.C. Code, as amended, §32-1508(3)(V)(iii), and of failure to cooperate with vocational rehabilitation, pursuant to D.C. Code, as amended, §32-1507(d).

As an initial matter, I found the testimony of Lamar Dudley, Gregory Johnson, Thomas Hyde and David Duarte to be credible regarding the significant factual matters in dispute.

However, I did not find claimant's testimony regarding the sequence of events and circumstances surrounding the alleged events of Labor Day weekend 2003 (from the time he reported to work until his departure the following morning) to be entirely credible. This determination is based upon inconsistencies between claimant's version of said events and the other record evidence, including witness testimony and documentary submissions. This finding does not suggest claimant deliberately attempted to mislead or prevaricate; it is based upon the belief of the undersigned that claimant's inebriated condition, on the morning in question, had a negative effect on claimant's comprehension, memory and/or perception of what actually occurred.[4]

In August of 2003 claimant, whose date of birth is May 6, 1950, was a conduit installer for employer. His work duties included building, installing, repairing, and maintaining employer's electrical system. Conduit installers who work overtime during storm duty are dispatched to unlit areas they may be unfamiliar with where live power lines and trees are down. His direct supervisor was Gregory M. Johnson, Sr.

At about 11:45 p.m. on August 29, 2003, claimant reported to work at employer's Benning Road site in the District of Columbia, on overtime storm duty. Earlier that evening, between 5:00 and 7:00 p.m., claimant drank some beer. When he arrived at the work site, claimant got permission from Mr. Johnson to go get cigarettes, returned to the work site and sat in his car in the parking lot. About 3:00 a.m., a co-worker told claimant Mr. Johnson wanted to see him. Mr. Johnson's reason for summoning claimant was so that he could drive a CDL vehicle, weighing 13 tons, to a job assignment.

Claimant's faculties were impaired by alcohol when he was at work during the early morning hours of August 30, 2003.

When claimant reported to Mr. Johnson's office, the supervisor told him he smelled alcohol on his breath, accused claimant of drinking, made a telephone call, and told him to sit there. Mr. Johnson had difficulty conversing with claimant due to his extremely slurred speech which was repetitive, nonsensical and virtually inaudible. He observed claimant's eyes, which were bloodshot, and that claimant appeared to be unsteady on his feet.

About an hour later another supervisor, David Duarte, arrived. Mr. Duarte observed claimant to be reeking of alcohol, unsteady on his feet, to have bloodshot eyes and slurred speech. He chastised claimant loudly for being intoxicated, announced that he was going to give claimant a Breathalyzer test, then directed Mr. Johnson to bring claimant and meet him at employer's downtown office.

When Mr. Johnson, Mr. Duarte and claimant reconvened in Mr. Duarte's downtown office, Mr. Duarte directed claimant to sit in a chair in the corner of his office. Claimant asked to be excused to use the restroom and Mr. Duarte told

---

[4] Claimant reported to work at 12:00 am on August 30, 2003. More than eleven hours later, at 11:32 a.m., claimant's level of intoxication, as measured by a breath alcohol concentration test, was 0.065%. The U.S. Department of Transportation [DOT] requires removal from safety sensitive duties for up to 24 hours when results of this test are in the 0.02-0.039 range. (RX 1).

him to "wait a minute". Shortly thereafter, Mr. Negussie Birratu, who was at that time a senior labor relations specialist for employer, came into Mr. Duarte's office. Again, claimant asked to use the restroom and Mr. Duarte told him to sit there and wait. Claimant also asked to go smoke a cigarette with Mr. Duarte and Mr. Johnson; Mr. Duarte refused him permission, telling him again to sit down.

During the extended time (about two hours) that claimant was sitting and waiting in Mr. Duarte's office, Mr. Duarte was making telephone calls to try to arrange for a Breathalyzer test. At some point, claimant asked Mr. Duarte why he was treating him like a dog or an animal, and Mr. Duarte did not respond.

A few minutes later, when claimant attempted to speak again, Mr. Duarte forcefully told him to "shut up". Later, Lamar L. Dudley, a union representative, also entered Mr. Duarte's office. Mr. Dudley introduced himself to claimant and explained why he was there. Shortly thereafter, everyone in the office was instructed to leave by Mr. Duarte. Claimant, Mr. Dudley, Mr. Johnson, and Mr. Negussie got into an automobile and left. When they drove off, it was after 5:00 a.m., and it was not dark. Claimant rode in the back seat with Mr. Dudley; Mr. Johnson drove, and Mr. Negussie rode in the front passenger seat.

The vehicle headed south and drove for about an hour; claimant observed a sign for Dulles Airport. At some point, the driver was lost, and stopped to ask for directions.

The group arrived at a facility where Mr. Negussie and Mr Dudley spoke with a physician; the group was at this facility for about an hour. Claimant asked Mr. Negussie if he could use the restroom, and was refused. Mr. Dudley asked both Mr. Negussie and Mr. Johnson to give claimant something to eat or drink, and was refused.

The group drove around for some time before reaching another facility, where they stopped. Mr. Dudley and Mr. Negussie went to the back to speak with the physician there; claimant asked Mr. Johnson again for something to eat, and was refused. The physician at the second facility came out into the waiting room and advised the group that they couldn't get the Breathalyzer test done there. At about 8:30 a.m., Mr. Dudley insisted that claimant be allowed to use the restroom. Claimant did so, thanked Mr. Dudley when he came out, and was given a drink of water.

The group left that facility and returned to employer's downtown building. The others in the group purchased donuts and coffee, but refused claimant anything to eat or drink. The group returned to Mr. Duarte's office, and Thomas Hyde, a Breathalyzer technician arrived about 11:00 a.m. Although Mr. Hyde stated that they had waited too long, at Mr. Duarte's direction claimant was tested. On August 30, 2003 at 11:32 a.m., two successive Breathalyzer tests were administered to claimant. Both tests had positive results; the first reading was 0.070, and the second reading was 0.065. (CX 6).

Claimant, Mr. Duarte and a security officer next went to claimant's automobile, which Mr. Duarte directed the officer to "shake down". Security inspected claimant's car trunk, inside the passenger compartment, and under the seat. Mr. Duarte told claimant he had been placed on five days crisis suspension, and left. Claimant got in his car, drove home, and went to bed.

Claimant was placed on suspension effective September 1, 2003. Mr Dudley sent a report

describing the August 30, 2003 incident to the union local; one week later, the union local filed a grievance on claimant's behalf. Claimant returned to work on September 2, 2003; he performed his usual duties as a conduit installer and also worked on overtime storm duty. He performed his job duties with no apparent problems or unusual behavior.

On September 10, 2003, claimant was re-tested, with negative results. However, on September 30, 2003 he was placed on "Decision Making Leave"["DML"], which required participation in a program for alcohol rehabilitation. The DML also placed claimant on drug and alcohol probation for three years and provided for random drug and alcohol testing during the first two years of the probation. Claimant was told that successful completion of the alcohol rehabilitation program was a condition of continued employment, and that failure to complete the program would result in his termination.

Beginning in mid-October of 2003, claimant participated in a rehabilitation program for two weeks; taking Antabuse medication was a requirement of the program. Although drinking alcohol was prohibited by the rehabilitation program, claimant continued to drink beer, at home, while he was enrolled in the program. Claimant was terminated from the rehabilitation program on October 27, 2003.

On October 28, 2003, while exercising at home, claimant felt upper extremity numbness and tingling. He sought emergency medical attention at Howard University Hospital, where he was seen, prescribed medication, and released. In early November of 2003 claimant sought psychiatric treatment.

Claimant did not return to work; he was on sick leave from November 3, 2003 until 26 weeks later (in or about February of 2004) when his sick leave ran out; he received about three months of unemployment benefits as well. Thereafter, claimant was terminated by employer. [5]

There is no record documentary evidence to indicate claimant filed an Employee's Notice of Accidental Injury or a claim application related to the alleged August 31, 2003 injury, with the District of Columbia Office of Workers' Compensation ["OWC"].

An Employer's First Report of Injury or Occupational Disease, reflecting a post traumatic stress (mental) injury beginning November 3, 2003, was filed with the District of Columbia Office of Workers' Compensation on January 28, 2004.[6]

## DISCUSSION

The arguments of both parties on the issues presented for resolution were given equal consideration. To the extent an argument is consistent with my findings and conclusions, it is accepted; to the extent an argument is inconsistent, it is rejected.

Claimant's position is that he sustained a compensable emotional injury, post traumatic stress disorder, as a result of employer's actions on Labor Day weekend of 2003 (on or about

---

[5]Claimant testified, at his August 3, 2005 deposition and at the August 17, 2005 formal hearing, that he was terminated effective November of 2004.

[6]The typed portions of this form indicates it was completed by a Sharon Rosado and submitted by a Jonnetta Gross, whose official position is Senior Claims Examiner. However, claimant's signature appears on the signature line under Ms. Gross' typed name. (EX 1).

August 29-31, 2003); and that he timely informed employer of the injury and its relationship to his work activity, and timely filed a claim for benefits related to said injury. However, this claim for benefits is not compensable, in that claimant did not sustain a compensable employment-related emotional injury as alleged.

To be compensable under the Act, an injury must be either an "accidental" injury that arises out of and in the course of employment or an "occupational disease or infection" that arises naturally out of such employment or as naturally or unavoidably results from such accidental injury. Emotional injuries resulting from job stress are, in appropriate circumstances, compensable "accidental injuries" under the statute. *Sturgis v. District of Columbia Department of Employment Services*, 629 A.2d 547 (D.C. 1993); *Young v. District of Columbia Department of Employment Services*, 681 A.2d 451 (D.C. 1996).

Of course, in this jurisdiction, a claimant is entitled to a presumption under the Act that his/her injury arose out of and in the course of his/her employment. However, the presumption is only invoked when a claimant presents some "initial demonstration" of an employment connection to his or her disability. *See Ferreira v. District of Columbia Department of Employment Services*, 531 A.2d 651, 655 (D.C. 1987).[7] Once the presumption is invoked, the employer must rebut the presumption by offering substantial evidence that the claim did not arise out of and in the course of employment. *Dunston v. District of Columbia Department of Employment Services*, 509 A.2d 109, 111 (D.C. 1986). In this case, where the claim is for benefits related to an alleged emotional injury, the evidence adduced by claimant is not sufficient to invoke the statutory presumption.

In order for a claimant to establish that an emotional injury arises out of the mental stress or mental stimulus of employment, the claimant must show that actual conditions of employment, as determined by an objective standard and not merely the claimant's subjective perception of his working conditions, were the cause of his emotional injury. The objective standard is satisfied where the claimant shows that the actual working conditions could have caused similar emotional injury in a person who was not significantly predisposed to such injury. *Dailey v. 3M Co.*, H&AS No. 85-259 (Final Compensation Order May 19, 1988), quoted in *Spartin v. District of Columbia Department of Employment Services*, 584 A.2d 564, at 568 (D.C. 1990).

Psychological injuries are only compensable under the Act if the work incident (or incidents) constitutes a sufficient stressor. *Landesberg v. District of Columbia Department of Employment Services*, 794 A.2d 607 (D.C. 2002). This agency may properly apply a rule for causation in the area of emotional injury that discourages spurious claims - one focusing on the objective conditions of the job and their effect on the "normal employee" not predisposed to the injury by a mental disorder. *Porter v. District of Columbia Department of Employment Services*, 625 A.2d 886 (D.C. 1993).

The credible version of the events surrounding claimant's activities on August 30, 2003 does not reflect the presence of stressors which would cause emotional injury to a person not

[7] The presumption was designed to effectuate the humanitarian purposes of the statute, reflecting a strong legislative policy favoring awards in arguable cases. *Id.*

predisposed to such injury. In that the evidence adduced by claimant has not invoked the presumption of compensability, his claim for relief, pursuant to the District of Columbia Workers' Compensation Act, must fail.

Claimant testified, at hearing and at his deposition, that he was forcibly detained with implied threats of physical harm; that he was driven around in the dark for hours with intimidating companions who did not respond to his questions about where and why they were traveling; that he urinated on himself because he was not allowed to use a restroom; that it was obvious to his companions that he wet himself; that they laughed at him for urinating on himself and that they later told co-workers, who ridiculed him when he returned to work. Claimant believes he was treated like a dog or an animal, and remembers that the way he was treated made him feel "like dirt".

Claimant was wearing pale grey coveralls the morning of August 30, 2003; he believes that the front of his pants all the way down to his shins, was wet with dark stains after he urinated on himself. He says that he felt humiliated and embarrassed when, according to him, Mr. Johnson and Mr. Negussie looked at his soiled pants and snickered. According to claimant's testimony, when he returned to work after the five day suspension he was embarrassed because he believed co-workers were talking about him urinating on himself. However, these perceptions were not corroborated by evidence from any other source.

Rather, the credible record evidence indicates that claimant was visibly inebriated, unsteady on his feet, and incoherent; that he was not forcibly restrained or coerced into going; that he understood that he was being driven to find a facility which would administer a Breathalyzer test; that it was not dark when he and the other PEPCO employees (including a union representative who had identified himself to claimant and was there to look out for claimant's interests) left the downtown office; that they were driving around trying to find a facility for no longer than five hours; that the atmosphere in the car was friendly and relaxed rather than oppressive, and that no one in the car or at the office (again, including the union representative who was present to look out for claimant), was aware of claimant's urinating on himself.[8]

Clearly, it is claimant's *perception* of the events of August 30, 2003, rather than the actual incident, which impacted his emotional state. Said perception, which does not reflect the reality which would have been experienced by the "normal employee", cannot invoke the presumption that the actual incidences had the potential to cause emotional injury.

Even assuming, *arguendo*, that claimant invoked the presumption by showing that employer's actions on August 30, 2003 had the potential to cause emotional injury in a person not predisposed to such injury, and that he did in fact sustain a disabling emotional injury that morning, the presumption would be rebutted by the substantial record evidence adduced by employer. *See Dunston, supra*.[9] In this forum,

---

[8] Mr. Dudley testified that although claimant appeared to be nervous, he did not appear to be afraid; that everyone in the car was levelheaded, even joking and kidding around; and, that he did not observe any mistreatment of claimant that morning, by anyone. (HT 117- 120).

[9] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Stewart v. District of Columbia Department of Employment Services*, 606 A.2d 1350 (D.C. 1992).

the undersigned may draw any reasonable inference from the evidence presented. *See George Hyman Construction Co. v. District of Columbia Department of Employment Services*, 498 A.2d 563, 566 (D.C. 1985).

Psychological injuries, to be compensable under the Act, must be caused by a sufficient stressor. *Landesberg, supra.*; *Porter, supra.* The stressors which allegedly caused claimant's PTSD are as follows. After drinking beer, claimant reported to work for the shift beginning at 12:00 a.m. on August 30, 2003. He was accused of being intoxicated and ordered to take a Breathalyzer test, then driven around Virginia and the Washington D.C. metropolitan area (in a search for a facility willing to administer the test) for several hours, stopping at several locations. He was not allowed to eat, drink or use the restroom. He was finally given a Breathalyzer test, which was positive for alcohol, and a urine test, which was negative for drugs, at 11:32 that morning, and sent home.

Claimant remained off work until Tuesday, September 2, 2003 when he returned to his usual work duties and continued to work (on storm duty as well as his usual work duties) until September 30, 2003 when he was placed on Decision Making Leave. He began alcohol rehabilitation treatment on October 20, 2003, attending the program in the evenings for 3 hours while continuing to work. Claimant was discharged from the alcohol rehabilitation program on October 27, 2003 for noncompliance.

The record medical opinions related to this claim for a work-related stress disorder may be summarized as follows. In early November of 2003 claimant sought psychiatric treatment at FACTS. [10] He was provided a "excuse slip" indicating he was unable to work at that time because his reported symptoms met the diagnostic criteria for Posttraumatic Stress Disorder (PTSD). The record includes a January 12, 2004 report from Carl Douthitt, Ph.D. of FACTS in which Dr. Douhitt indicated that claimant was suffering from PTSD, and recommended that claimant not return to work.

On August 8, 2005 Radhika Joglekar, MSW, LICSW, a clinical social worker with FACTS, again diagnosed claimant with PTSD and recommended weekly therapy until his symptoms decreased. He also referred claimant to Dr. Thomas Green for psychopharmacologic treatment of stress and anxiety symptoms. Claimant began treating with Dr. Dihr Shakuntala, a psychiatrist, for medication management; she prescribed Lexapro, an antidepressant, and Ambien, a sleeping medication which claimant takes intermittently. Claimant also takes Norvasc for hypertension.

On March 4, 2004 Brian Schulman, M.D., a specialist in occupational psychiatry, reviewed claimant's medical records and examined claimant at employer's request. Dr. Schulman rendered a diagnosis of adjustment disorder, with mixed emotional features of anxiety and depression, that developed on or about September 30, 2003 when claimant was put on probationary status. Dr. Schulman found no evidence that claimant suffered with PTSD as a result of the events of Labor Day weekend, 2003, when he was detained and subjected to

[10] FACTS is an acronym for Family Assistance in Coping with Trauma and Stress, an association with several psychologists, a social worker and a psychiatrist listed on the letterhead. The signatures of the persons who signed claimant's medical records and excuse slips are illegible; the 11/3/03 "excuse slip" appears to be signed by Dr. Douthitt. (CX 2).

Breathalyzer testing. He recommended that claimant resume appropriate alcohol rehabilitation treatment as a condition of his return to work.

The events claimant experienced on Labor Day weekend of 2003 are not stressors which would incapacitate a person not predisposed to emotional illness.[11] Although arguably claimant was predisposed to emotional illness, in the opinion of the undersigned it would be unreasonable to conclude the events of August 30, 2003, even if they occurred as described by claimant, caused him to develop post traumatic stress syndrome. This determination is based, in part, on claimant's own admissions at hearing and in the record.

Dr. Schulman's report indicates claimant, prior to going to prison, jumped from a ninth floor apartment to avoid being apprehended during a robbery. In the fall, he suffered multiple injuries which required a lengthy period of recuperation and rehabilitation. He then spent at least eight years in prison. Again according to Dr. Schulman's report, claimant was a substance abuser for many years, prior to undergoing recovery, and was incarcerated frequently for offenses related to his addiction.

On numerous occasions during claimant's thirteen year tenure with employer, he - along with other similarly situated employees - underwent Breathalyzer and urine testing as part of PEPCO's routine procedures. As a result, he was familiar with the requirements, rules and procedures related to PEPCO's Drug and Alcohol policy.

Claimant's testimony is that he was afraid because they were driving around in Virginia in the middle of the night; he was being mistreated; and, he received worse treatment the evening he was driven around to get the Breathalyzer than he had ever before experienced in life, even during the eighteen years he was incarcerated at various penal facilities. He avers that he began having nightmares and trouble sleeping that night. He also described experiencing flashbacks of the experience, difficulty concentrating, and insomnia.

Claimant's involuntary experience of riding around Virginia on August 30, 2003 with three co-workers while he was inebriated may have been uncomfortable and disturbing, given his condition and situation. He may have urinated on himself and felt embarrassed.[12] However, these are not stressors which would cause emotional injury to a person not predisposed to such injury. In claimant's case, his testimony that these events were more frightening and stressful than anything experienced in his past was patently incredible.

Furthermore, claimant was not disabled by the Labor Day events; he returned to work as soon as he was permitted to do so, on September 2, 2003, and worked full time and overtime duty

---

[11] Even an employee with a predisposition to emotional injury can recover benefits under the Act if he is exposed to work conditions so stressful that a normal employee might have suffered similar injury. Again, in this jurisdiction the determination must focus on the objective conditions of the job and their effect on the "normal employee" not predisposed to the injury by a mental disorder. *Porter, supra.*

[12] None of the persons who observed claimant during the subject incident testified that they saw, smelled, or were otherwise made aware of claimant's urinating on himself. Claimant described being visibly wet, such that his companions snickered at his condition. Mr Johnson testified that neither claimant nor the seat upholstery of his vehicle were wet. Mr. Dudley, Mr. Birratu and Mr. Duarte denied observing claimant having wet himself.

until he was placed on DML on September 30, 2003. Employer's IME psychiatrist, Dr. Schulman, indicated claimant developed an adjustment disorder as a result of being placed on DML. However, claimant is alleging he suffered PTSD as a result of the August 30, 2003 events. If he developed an adjustment disorder from being placed on DML, clearly what he could not adjust to (as stated by Dr. Schulman) was the reality that he had a problem with alcohol addiction.[13]

## CONCLUSION OF LAW

Based upon the record evidence, I conclude claimant did not sustain an emotional injury arising out of and in the course of his employment on or about August 31, 2003.

[13]The record is replete with incidences of claimant's denial of his alcohol addiction; in fact, that is the reason he did not complete the rehabilitation program in October of 2003.

**ORDER**

It is hereby **ORDERED** that this claim be **DENIED.**

Amelia G. Govan

AMELIA G. GOVAN
ADMINISTRATIVE LAW JUDGE

March 17, 2006

DATE

**RE:** ***Benjamin Ramey v. Potomac Electric Power Company/CHC,***
**OWC No. 608087, AHD No. 05-318.**

## *APPEAL RIGHTS*

This order is effective upon filing with the Mayor pursuant to §21 of the Act, D.C. Code, as amended, §32-1520. 7 DCMR §230.12; §22a of the Act, D.C. Code, as amended, 2001, §32-1522a. Any party aggrieved by this Order may file an application for review with the Chief Judge, Compensation Order Review Board, Labor Standards Bureau, Department of Employment Services.

**Send Application for Review to:**

**Compensation Order Review Board/Chief Judge**
**Department of Employment Services**
**Labor Standards Bureau**
**64 New York Avenue, N.E.,**
**Third Floor**
**Washington, D.C. 20002**

The Application for Review must be filed within 30 days of the date of the filing of this Order with the Mayor as provided in §22a(a) of the Act, D.C. Code, as amended, §32-1522a(a). An Application for Review is perfected by filing with the Chief Judge, Compensation Review Board, Labor Standards Bureau two (2) copies of an Application for Review, two (2) copies of a memorandum of points and authorities in support of the application and certification that copies of the application and memorandum have been served, by mail or delivery, upon the opposing party(ies). 7 DCMR §§230.1, 230.2; §22a of the Act, D.C. Code, 2001, §32-1522a.

**RE:** ***Benjamin Ramey v. Potomac Electric Power Company/CHC,***
**OWC No. 608087, AHD No. 05-318.**

## *CERTIFICATE OF SERVICE*

I hereby certify that a copy of the foregoing was sent this 17th day of March, 2006 to the following:

| | |
|---|---|
| Charles Green, Acting Assistant Director<br>Labor Standards/DOES<br>64 New York Avenue, N.E., Suite 3923<br>Washington, D.C. 20002 | **Hand Delivery** |
| Associate Director<br>Department of Employment Services<br>64 New York Ave., N.E., Second Floor<br>Washington, D.C. 20002 | **Hand Delivery** |
| Maria C. Mendoza, Esquire<br>216 G Street, N.W., First Floor<br>Washington, D.C. 20001 | **Certified** |
| Kevin J. O'Connell, Esquire<br>401 East Jefferson Street, Suite 204<br>Rockville, Maryland 20850 | **Certified** |
| Benjamin Ramey<br>4251 Clay Street, N.E.<br>Washington, D.C. 20019 | **Certified** |

MALCOLM J. LUIS-HARPER, CHIEF ALJ
ADMINISTRATIVE HEARINGS DIVISION

Case No. 07-2132 (RJL)

# Exhibit H

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

POTOMAC ELECTRIC POWER CO.
PLAINTIFF,

CASE NO. 06CA5435

V.

RECEIVED
Civil Clerk's Office
MAR 13 2007
Superior Court of the
District of Columbia
Washington, D.C.

BENJAMIN RAMEY, PRO-SE
DEFENDANT,

DEFENDANTS ~~MOTION~~ TO OPPOSE PLAINTIFF'S MOTION TO CONTINUE MEDIATION

1. PLAINTIFF WAS AWARE SINCE JULY OF 2006 THAT THE MEDIATION DATE WAS SCHEDULED FOR APRIL 26, 2007.
2. MR. RAMEY ACKNOWLEDGE THAT SITUATIONS DO OCCUR, BUT PLAINTIFF'S ARE REPRESENTED BY SEVERAL ATTORNEYS, SO MR. RAMEY FEELS AS THOUGH AT LEAST ONE ATTORNEY CAN BE AVAILABLE ON APRIL 26, 2007.
3. PLAINTIFF FILED AN INJUNCTION ON MR. RAMEY AND SHOULD HAVE BEEN PREPARED, LET ALONE DESPERATE TO CONTINUE FOREWARD WITH THIS CASE.
4. MR. RAMEY HAS BEEN EXPERIENCING AN ENORMOUS AMOUNT OF HARDSHIP CAUSED BY THE INJUSTICE OF PLAINTIFF FOR FORTY ONE MONTHS AND A CONTINUANCE WOULD BE ADDITIONAL HARDSHIP THAT NO MAN OR WOMAN SHOULD HAVE TO EXPERIENCE AND SUFFER THE LOSS OF DIGNITY AND RESPECT BY LIES.

5. THEREFORE, MR. RAMEY REQUEST THAT THE COURT ISSUE AN ORDER DENYING PLAINTIFF'S MOTION FOR A RESCHEDULING.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THE 13TH DAY OF MARCH 2007, I HAVE CAUSED THE FOREGOING MOTION TO BE SERVED VIA FIRST CLASS MAIL, POSTAGE TO:

ATTY. ADAN GUSSMAN
1700 K ST. N.W.
WASH. D.C. 20006

Benjamin Ramey
BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C. 20019

Case No. 07-2132 (RJL)

# Exhibit I

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

RECEIVED
Civil Clerk's Office
MAY 0 9 2007
Superior Court of the
District of Columbia
Washington, D.C.

BENJAMIN RAMEY,

PLAINTIFF,

V.

JILL FLACK, ET AL.,

DEFENDANTS.

CASE NO. 07CA1625 B
JUDGE MELVIN WRIGHT
NEXT EVENT: INITIAL CONFERENCE
JUNE 22, 2007

OPPOSITION TO KELVIN O'CONNELL'S MOTION TO DISMISS

PURSUANT TO SUPERIOR COURT RULE OF CIVIL PROCEDURE, PLAINTIFF BENJAMIN RAMEY, BY PRO SE, RESPECTFULLY SUBMIT EVIDENCE OF DOCUMENTS AND STATEMENTS IN SUPPORT OF THIS MOTION TO BE GRANTED AND TO ALLOW EXPERT WITNESS ALCOHOL TECHNICIAN, OFFICE WILSON TO EXPLAIN THE TEST FORMS.

I. INTRODUCTION

ONCE AGAIN, ATTY./DEFENDANT DELORME IS TRYING THE SAME TACTICS ON THE COURT TO DISCREDIT PLAINTIFFS' EVIDENCE AND STATEMENT OF A KEY WITNESS BY COVERING UP THE TRUTH FROM THE COURT TO PROTECT ITS CLIENT (PEPCO). KELVIN O'CONNELL IS JUST ANOTHER HUMAN BEING AS AN ATTORNEY WHO MISREPRESENTED AND COVERED UP THE TRUTH BY LYING TO THE COURT AS THE OTHER ATTORNEYS HAS DEMONSTRATED IN ALL OTHER TRIBUNALS. ALL DEFENDANTS WERE SERVED AND IF PLAINTIFFS' MOTION IS GRANTED CONSIDERING THE EVIDENCE PRESENTED, PLAINTIFF IS REQUESTING THE COURT TO ORDER DEFENDANTS TO SUBMIT THE ORIGINAL COPIES OF ALL THE TEST FORMS THAT BARE PLAINTIFFS SIGNATURE AND HAVE MR. HYDE PRESENT.



2. ON MARCH 17, 2005 KELVIN O'CONNELL SUBMITTED INTO EVIDENCE AN ALCOHOL TEST FORM WITH A TEST RESULT OF 0.40 AS PLAINTIFFS' TEST, (EX. 1, TEST FORM O'CONNELL SUBMITTED) BUT AFTER PLAINTIFFS' ATTORNEY SUBMITTED THE FIRST TEST FORM GIVEN TO PLAINTIFF ON SEPT. 1, 2003 WITH A TEST RESULT OF 0.045, KELVIN O'CONNELL AND ALCOHOL TECHNICIAN, MR. HYDE TESTIFIED THAT 0.40 WAS A CALIBRATION AND NOT A TEST. (EX. 2, TEST FORM SUBMITTED BY PLAINTIFFS' ATTORNEY.

3. DEFENDANTS O'CONNELL, T. FLACK AND C. DELORME HAD KNOWLEDGE OF THE FALSIFIED TEST FORM AND COVERED UP THE TRUTH BY LYING TO THE COURT ADDRESSING 0.40 AS A CALIBRATION AND NOT A TEST. (EX. 3, DEFENDANTS CONFIRM THAT 0.40 IS A CALIBRATION). (EX. 4, STATEMENT FROM A U.S. CAPITAL POLICE OFFICER ALCOHOL TECHNICIAN CONFIRMING THAT 0.40 WAS A TEST AND NOT A CALIBRATION AS DEFENDANTS CLAIM).

## II. ARGUMENT

A. DEFENDANTS ARE NOT IMMUNE FROM WRONG DOING. THEY HAVE TO STAND ACCOUNTABLE AS ANYONE ELSE WHEN THEY PRACTICE UNETHICAL CONDUCT. INSTEAD OF ADVICING THEIR CLIENT OF THE FALSIFIED DOCUMENT, THEY CHOSE TO COVER IT UP BY LYING TO THE COURT AS IF NOTHING EVER OCCURED TO DISCREDIT PLAINTIFFS' TESTIMONY OF THE ACTUAL EVENTS THAT REALLY OCCURED ON SEPT. 1, 2003. ATTY. DELORME SOUNDS REAL PROFFESSIONAL IN HIS MOTIONS, BUT HAS NEVER ONCE PROVIDED ANY EVIDENCE, ANY EXPERT WITNESS NOR NOT ONE OF THE DEFENDANTS TO COME FORWARD TO TESTIFY, OTHER THAN THE TWO ARBITRATORS DECISIONS, WHOM ARE CONTRACTED BY PEPCO, THE ALJ GOVAN OF THE DEPT. OF EMPLOYMENT SERVICE WHO RUBS SHOULDERS AND BREAKS BREAD WITH KELVIN O'CONNELL AND JUDGE RETCHIN WHO WAS CONVINCED THAT THE ALCOHOL TEST RESULT DICTATED THAT PLAINTIFF WAS INTOXICATED AT THE TIME OF EVENTS.



4. PLAINTIFFS' MOST IMPORTANT EXPERT WITNESS IS CRIMINAL INVESTIGATOR MS. DAVIS THAT IS WORKING OUT OF SUPERIOR COURT AND HAS BEEN LICENSE FOR OVER TWENTY YEARS. MS. DAVIS HAS BEEN INVESTIGATING PLAINTIFF CASE SINCE MID 2004. MS. DAVIS DISCOVERED THAT ALCOHOL TECHNICIAN, MR. HYDE WHO WAS KELVIN O'CONNELLS' KEY WITNESS, WAS NOT ~~ONLY~~ CONTRACTED FOR PEPCO, BUT WAS NOT CERTIFIED TO TEST IN THE DISTRICT OF COLUMBIA. IF THE COURT EXAMINE MR HYDES' CERTIFICATE, EX.5 IT IS BOGUS AND FOR THAT REASON IS WHY ATTY. DELORME NEVER SUBMITTED IT INTO EVIDENCE. PLAINTIFF ALSO HAS TWO FEDERAL DOT AGENTS AND A FEDERAL U.S. CAPITAL POLICE ALCOHOL TECHNICIAN EXPERT WITNESS TO TESTIFY THAT THE TEST FORM IS DEFINITELY ILLEGAL.

5. JUDGE RETCHIN WAS THE ONLY JUDGE WHOM THIS CASE WAS PRESENTED IN FRONT OF THAT HAD NO CLOSE TIDES TO PEPCO AND SHE FAVORED PEPCO BEFORE THE START OF THE HEARING WHEN THE PLAINTIFF WAS ASKED, "WOULD HE COME AFTER HER, IF SHE RULED WITH PEPCO," SO PLAINTIFFS' CASE WAS PREDICTED EVEN BEFORE HIS EVIDENCE WAS PRESENTED. ATTY./DEFENDANT DELORME EVEN SAID BEFORE OFFICER WILSONS' STATEMENT; THAT IF 0.40 IS A TEST THEN THE COMPANY (PEPCO) WOULD HAVE TO LOOK AT THIS CASE DIFFERENT. ANOTHER ATTY. WHO REPRESENT PEPCO (ADAM GUSSMAN) WHO WAS PRESENTED WITH OFFICER WILSONS' STATEMENT BY INVESTIGATOR, MS. DAVIS TOLD HER, "WHY SHOULD ATTORNEYS TRY TO FIND OUT SOMETHING WHEN IT COULD BE AGAINST THEIR CLIENT," WHEN SHE ASK HIM TO CONTACT AN ALCOHOL TECH. ON TWO DIFFERENT OCCASIONS, ATTY. DELORME AND ATTY. GUSSMAN DISCUSSED WITH MS. DAVIS SETTLEMENT FIGURES IN THE SIX DIGITS FOR PLAINTIFF TO DISCONTINUE THE SUING OF PEPCO AND ATTORNEYS', BUT AFTER A WEEK AND HOURS OF AN AGREED AMOUNT ON A SETTLEMENT, ATTY. DELORME WITHDREW AFTER PLAINTIFF WOULD NOT EXCEPT POCKET CHANGE.

6. THE COURT NEED TO DECIDE WHETHER THESE ARE ATTORNEYS' WHO REPRESENT THEIR CLIENT WITH THE TRUTH OF THE FACTS OR ATTY./DEFENDANTS WHO KNOW THE TRUTH, CONSPIRED AS ONE TO COVER UP THE TRUTH, BY LYING AND MANIPULATING THE COURT SYSTEM TO DISCREDIT NOT ONLY PLAINTIFFS' EVIDENTS, BUT ALSO TO DISCREDIT AND DOWN PLAY A WRITTEN STATEMENT FROM



A FEDERAL U.S. CAPITAL ALCOHOL TECHNICIAN POLICE OFFICER WHOM HAS NO IDEA ABOUT THIS CASE AND WHO IS WILLING TO TESTIFY IN COURT THAT THE TEST FORM ATTYS./DEFENDANTS SUBMITTED AS THEIR EVIDENCE IS ILLEGAL.

7. THE VICE PRESIDENT OF PEPCO, MR. ERNEST JENKINS ARRANGED ON TWO SEPARATE OCCASIONS TO MEET AND DISCUSS WITH MS. DAVIS ON ALL THE CLAIMS OF HER INVESTIGATION OF PEPCO MANAGERS AND ATTYS., BUT ATTY. DELORME INTERVENED. MS. DAVIS WAS ALSO TOLD BY A FEDERAL DOT AGENT, MR. JERRY FULMACKIE THAT A TEST FORM IS DEFINITELY ILLEGAL WHEN TWO TEST RESULTS ARE ON ONE TEST FORM AND THAT SHE CAN QUOTE HIM.

8. ALL OF THE ATTORNEYS, DEFENDANTS AND MR. HYDE HAD KNOWLEDGE OF THE TEST FORM BEING FALSIFIED AND IF THE COURT FOCUS DIRECTLY UNDER WHAT WAS MANUALLY RECORDED 0.40 IN THE SQUARE AT THE BOTTOM RIGHT ON EX. 1, IT CLEARLY STATES, ACCURACY TEST RESULT" ON PLAINTIFFS COPY, BUT IF THE COURT FOCUS ON EX. 6, WHICH IS THE SAME TEST FORM ATTYS. SUBMITTED AS AN EXHIBIT THAT WAS VERY UNPROFESSIONAL BECAUSE IT IS UNCLEAR AS TO WHAT WAS ACTUALLY PRINTED UNDER 0.40. THIS WAS ANOTHER TACTIC BY DELORME TO MANIPULATE THE COURT SYSTEM TO RULED AGAINST PLAINTIFF.

9. THIS FALSIFIED TEST FORM THAT THE ATTYS./DEFENDANTS KNOWINGLY SUBMITTED AS EVIDENCE THAT PLAINTIFF WAS INEBRIATED WHEN TESTED WAS IN FACT TO DISCREDIT HIS TESTIMONY OF THE ACTUAL EVENTS THAT OCCURED ON SEPT. 1, 2003 AND THEY HAVE BEEN SUCCESSFUL BECAUSE PLAINTIFF IS FILING PRO-SE AND IS FINANCIAL DRAINED FROM THE INJUSTICE CAUSED. ATTYS./DEFENDANTS NEED THE COURT TO DISMISS, NOT BECAUSE OF TIME AND COST, BUT BECAUSE THEY ARE GUILTY OF ALL CLAIMS PLAINTIFF FILED AGAINST THEM. WHAT OTHER REASON WOULD ATTYS. SPEND PEPCO'S TIME AND FEE ON THE PHONE FOR HOURS AND OFFICE APPOINTMENT TO REACH A SETTLEMENT WITH PLAINTIFF? IF INDEED ATTYS. HAD ONE FRACTION OF EVIDENCE OF PROOF THAT THEY WERE REPRESENTING THE TRUTH, WHY ARE THEY NEEDING THE COURT TO ASSIST BY DISMISSING INSTEAD OF REQUESTING A HEARING AND ALLOW THEIR EVIDENCE AND WITNESSES TO CONSTRUCT A DISMISSAL?

10. THE COURT NEED TO KNOW THAT THIS TEST FORM EX. 1, THE ALCOHOL TECHNICIAN, MR. HYDE WHO WAS SHORTY HIRED BY PEPCO AFTER ADMINISTERING THE ILLEGAL TEST ON PLAINTIFF AND THEN TERMINATED SHORTY AFTER PLAINTIFF FILED



A COMPLAINT AGAINST PEPCO WITH THE DEPT. OF TRANSPORTATION FOR FEDERAL ALCOHOL TESTING VIOLATIONS (EX.7) AND THE ATTYS./DEFENDANTS ARE RESPONSIBLE FOR PLAINTIFF HAVING TO FILE FOR BANKRUPCY ON HIS HOME IN THE NATIONS CAPITOL FOR TEN YEARS LAST MONTH (CASE NO. 07-00138). PLAINTIFF IS A 57 YR. OLD AFRICAN AMERICAN WHO WAS EMPLOYED BY PEPCO FOR THIRTEEN YRS. WITHOUT ANY KIND OF INCIDENT. PLAINTIFF HAVE NEVER HAD AN ALCOHOL OR DRUG RELATED INCIDENT WITH THE LAW. NOT EVEN ONE DWI IN HIS ENTIRE LIFE. PLAINTIFF DEPENDS ON HIS CDL (COMMERCIAL DRIVERS LICENSE) FOR EMPLOYMENT TO MAINTAIN HIS MEANS OF LIVING AS WHEN EMPLOYED BY PEPCO AND THAT OPPORTUNITY OF DEPENDING ON HIS CDL TO MAINTAIN HIS MONTHLY BILLS AND MORTGAGE WAS IMPOSSIBLE BECAUSE FOR THE TERMINATION OF HIS EMPLOYMENT FOR ALCOHOL ON HIS RECORD. NO EMPLOYER WILL RISK THE CHANCE OF HIRING SOMEONE THAT WAS TERMINATED FOR ALCOHOL ABUSE TO DRIVE LARGE TRUCKS AND IT IS UNDERSTANDABLE, SO PLAINTIFF NEED THE COURT TO DENY DEFENDANTS MOTION TO DISMISS, SO HE WILL HAVE THE FIRST OPPORTUNITY TO PRESENT HIS CASE IN A COURT OF LAW AND HOPEFULLY TO PUT HIS LIFE BACK TOGETHER BY APPLYING AND OBTAINING A DRIVERS POSITION IN A COMPANY.

11. IF THE COURT VIEW THE TRANSCRIP (CASE NO. 06-CA1089) IN CHAMBERS OF JUDGE GREEN ON JULY 18, 2006, IT IS PROOF OF HOW ATTYS./DEFENDANTS DEMONSTRATE BY KNOWINGLY + WILLINGLY VIOLATING THE LAW. SAME ATTYS./DEFENDANTS VIOLATED PLAINTIFFS' FIRST AMENDMENT RIGHT FOR FREE SPEECH, WHEN ATTYS/DEFENDANTS HAD NOT ONE, BUT THREE SECURITY GUARDS TO APPROACH PLAINTIFF AND HAVE HIM REMOVED FROM THE CORNER OF 9TH + G ST. N.W., WHEN HE WAS PASSING OUT LEAFLETS. PLAINTIFF WAS EVEN TOLD THAT OTHER MEASURES WOULD BE TAKEN HAD HE NOT LEFT. JUDGE GREEN CHASTISED THE ATTYS., TELLING THEM THAT THEY WERE WRONG, AND THAT HE BELIEVE THAT IF PLAINTIFF WAS FOUR BLOCKS AWAY, ATTYS. WOULD STILL TRIED TO HAVE PLAINTIFF REMOVED. ATTY. DELORME TRIED DESPERATELY TO FLEX MUSCLES ON JUDGE GREEN ARGUING TRYING TO PROVE A POINT OF WHAT WAS LAW, BUT JUDGE GREEN USED HIS AUTHORITY TO SILENCE DELORME. IT IS REPREHENSIBLE FOR AN ATTY. TO ARGUE WITH A JUDGE, LET ALONE RAISE HIS VOICE, BUT DELORME SHOWED NO RESPECT. IF ATTY. DELORME HAVE NO RESPECT FOR A JUDGE OF HONOR IN HIS OWN DOMAIN, WHY WOULD ATTY. DELORME EVEN INTERTAIN A THOUGHT OF ANY JUSTICE PLAINTIFF SHOULD RECEIVE FROM

THE COURT. JUDGE GREEN EVEN WENT FURTHER TO ASK PLAINTIFF WHAT DID HE WANT. PLAINTIFFS' REQUEST WAS JUSTICE AND FOR THE ATTY./DEFENDANTS TO ADMIT THE TRUTH. NOW PLAINTIFF IS AGAIN ONLY REQUESTING FROM THIS COURT NO MORE THEN SOME JUSTICE FROM THE EVIDENCE PRESENTED BY DENYING DEFENDANTS MOTION TO DISMISS BOTH COMPLAINTS AND ALLOW THE EVIDENCE AND TESTIMONIES FROM BOTH PARTIES TO RESOLVE THIS CASE. (EX.8, ORDER TO FILE BRIEF).

12. PLAINTIFF KNEW THAT THE FIRST ALCOHOL TEST WAS INDEED NOT HIS TEST FOR TWO REASONS, BUT WAS UNABLE TO PROVE HIS CASE. PLAINTIFF NEVER CONSUMED ANY KIND OF ALCOHOL PRIOR GOING TO WORK AND THAT IT WAS A SMALL ALCOHOL TEST TUBE THAT HE BLEW INTO NOT EVEN CONNECTED TO A MACHINE. PLAINTIFF WAS TOLD TO SIGN THE ALCOHOL TEST FORM, MR. DUARTE LEFT THE TESTING ROOM WITH THAT FORM (EX.9) AND RETURNED MOMENTS LATER WITH THAT SAME TEST FORM WITH A MACHINE PRINTOUT TEST RESULT OF 0.065 (EX.2). THAT TEST FORM WAS ALTERED AND IF IN FACT PLAINTIFF WAS INEBRIATED AS CLAIM, THEN WHY WAS HE PERMITTED NOT EVEN TWENTY MINATES AFTER THE TEST TO GET IN HIS VEHICAL AND DRIVE OFF OF PEPCO'S PROPERTY?

CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES THAT HE CAUSED A TRUE AND CORRECT COPY OF THE ATTACHED MOTION TO BE SERVED VIA-FIRST CLASS MAIL POSTAGE PREPAID ON THIS 9TH DAY OF MAY, 2007 ON THE FOLLOWING INDIVISUALS:

ATTY. DELORME
1700 K ST. N.W.
WASH. D.C. 20006

Benjamin Ramey
BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C. 20019